UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ACT NOW TO STOP WAR AND END RACISM )
  COALITION )
1247 E Street SE )
Washington, D.C. 20037 )
                                               )    Civil Action No.: 1:07-cv-01495
               Plaintiff, )                             (HHK)
v. )
 )
DISTRICT OF COLUMBIA )
441 Fourth Street, NW )
Washington, D.C. 20001 )
 )
         Defendant )
_____)

**COMPLAINT FOR INJUNCTIVE RELIEF**
(declaring D.C. postering regulations to be unconstitutional
in violation of the First Amendment and Due Process Clauses)

Political postering is a form of political communication deeply rooted in the American tradition of free speech. Like the leaflet and pamphleteering, postering is a time honored means used to compel and encourage political action.

Political candidates in the District of Columbia know that. That is why candidates such as the current Mayor cover the District with their posters. Yet the District of Columbia exempts politicians from certain regulatory requirements that are applied to grassroots activists. Politicians leave virtually not a single inch of the District, not a single traffic light or street light untouched during campaigns and leave their posters up for as long as they are relevant: many, many months at a time. Grassroots activists who seek to educate the public and compel political action outside of an electoral campaign are not afforded the same right.

The District of Columbia postering restrictions are a classic, unconstitutional regulatory

1

system in which favored content or subject matter receives favored treatment and privileges and where disfavored content, including anti-war posters calling for mass assembly, is burdened with crippling and potentially bankrupting fines. While the District allows its officials' campaign posters, even illegally posted ones, to remain unmolested the District demands that anti-war posters be ripped down.

The District has created a hierarchy of speech within its regulatory system.

Those who poster as candidates within election politics, the well financed party based political system, have highly valued speech and are allowed exemptions from the ordinary restrictions on the duration that posters may be affixed. Campaign related posters may stay posted for the entire period of their relevancy and beyond, from the moment a candidate meets certain eligibility requirements until thirty days after the *general* election, even if that candidate has lost in the primary.

The District has also identified posters bearing crime prevention content to be institutionally favored. Those posters may be posted forever and without duration limitation.

Anti-war posters calling for mass assembly protest for the September 15 National March on Washington to End the War in Iraq or any political poster outside those used by electoral candidates, however, are strictly limited to a sixty day maximum posting duration.

Certain provisions of the regulations, for which violation may mean bankruptcy, are so unclear and discretionary that it is impossible for a person or organization to know in advance whether what they are doing conforms to what is authorized. This allows the District to engage in contradictory and discretionary targeted selective enforcement.

One provision requires those who post to use adhesive that is sufficiently strong as to

prevent the poster from coming loose during any weather conditions than may occur during the period of posting. The very next provision requires use of adhesive that is fully removable.

One who posts can choose an effective but water-soluble adhesive, believing it to conform to these requirements, and find that she is to be bankrupted if the District decides to make discretionary determinations as to one *or the other* of these provisions. If posters stay up until they are properly taken down the District can bankrupt you. If posters come loose, the District can bankrupt you. It is a perfect scheme for selective enforcement. Following a pattern consistent with selective enforcement, the local government asserts that it has been "lenient" with enforcement except with recently posted anti-war posters calling for mass assembly on September 15, 2007.

An anti-war or grassroots organization need not even post a single poster itself in order to be shut down and bankrupt by the government.

The D.C. regulatory system is a "strict liability" system. This means that the originator of a poster is presumptively liable for its misuse, even if the originator did not actually post the sign.

Were there such an analogous strict liability system for newspapers, this would mean that *The Washington Post* would be subject to $2,000 fines every time a person "litters" by leaving a copy of the day's paper on a bench, or every time a page was found blowing in the wind. Not even this preeminent and well-established institution could withstand enforcement of such a punitive system.

This creates an extraordinary chilling effect on the free speech postering of a reasonable person.

Furthermore, the regulations impose registration requirements - - that a person who posts

3

political signage - - actually register with the Mayor their name, address, telephone number and the content of their speech. This violates the protected right to engage in anonymous speech. This requirement is waived for persons who post speech in support of a candidate for office.

Where the system's strict liability provisions are enforced, it also creates an extraordinary chilling effect even on the mere dissemination of political materials, flyers and posters, even though (obviously) there are many places, such as on dormitory bulletin boards, cafes, or in person's home windows or on their walls, where such items may lawfully placed regardless of the regulations.

The penalties for violations are draconian, even shocking. A hundred cited signs is a two hundred thousand dollar fine or, alternatively, a period of public servitude that exceeds one full year (if one counts all the hours in a year and allow none for break, food, or sleep).

Yet, there are few other forms of speech more critical than that which opposes war. Thousands of American lives have been lost and tens of thousands have life altering injuries. Hundreds of thousands of Iraqis have died, according to the medical journal the *Lancet*. A nation which by *all* accounts never threatened the United States has been destroyed and consumed with violence, its infrastructure eliminated, its children without access to schools or medical care or the semblance of a normal life. Hundreds of families in the DC region have been profoundly affected by the deaths and injuries of their loved ones. The financial costs of war threaten the internal economic future of the United States. Iraq war veterans who have turned against the war and protest are themselves being prosecuted by the government.

Yet, the District of Columbia sees its priority to be the unconstitutional attempt to bankrupt those who put up anti-war posters and the District acknowledges it has never so

targeted any entity before. It seeks to have signs torn down that call for people to engage in their First Amendment right to mass assembly on September 15, and is trying to have those signs torn down a month before event. The District is carrying out this unprecedented campaign under a regulatory scheme that is content-based, discriminatory, discretionary, contradictory and abridging of free speech rights.

The plaintiff - an anti-war and anti-racism organization - demands the District and Mayor's office cease the prosecutions and threats. It should be a goal of Mayor Fenty and the District to allow public postering on grassroots issues of public import in a way that is as generous as public postering is allowed to candidates for office or for those who post anti-crime messages.

The plaintiffs request this Court issue a prohibitory injunction that strikes down the entire regulatory system and bans enforcement in the absence of constitutionally allowable and non-discriminatory system.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction).

2. Venue is appropriately vested in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims herein occurred in the District of Columbia.

## PARTIES

3. The ACT NOW TO STOP WAR AND END RACISM COALITION ("ANSWER")is a grassroots organization that engages in community and national political organizing and

activism including carrying out meetings, protests, mass demonstrations and other educational activities in opposition to war and racism. ANSWER's national headquarters is in Washington, D.C.

4. The DISTRICT OF COLUMBIA is a municipal corporation and constitutes the local government of Washington, D.C.

## FACTS

5. The District of Columbia, pursuant to anti-litter laws, maintains regulations that restrict the use of posters on public space to communicate ideas and messages. These regulations are located within the District of Columbia Municipal Regulations, 24 DCMR §108.

6. The challenged postering regulations contain content based distinctions.

7. The challenged regulations contain distinctions based on whether the content of speech is a) commercial ("related to the sale of goods and services"), b) non-commercial (not "related to the sale of goods and services," c) political campaign literature (signs of "individuals seeking office," or d) aiding crime prevention ("designed to aid in neighborhood protection from crime").

8. Commercial signs are prohibited from posting on lampposts and appurtenances. 24 DCMR §108.1.

9. Noncommercial signs may be affixed to any lamppost, or appurtenance to a lamppost.

10. A lamppost is defined as any public post erected for the purpose of supporting electrical wires.

11. Public street lights and traffic lights are considered to be "lampposts." Traffic or utility boxes are considered lampposts or appurtenances to lampposts.

12. Among the three categories of regulated postering that encompass political speech or advocacy, the greatest burdens and restrictions are placed upon political speech or advocacy, that which is speech neither related to the sale of goods and services (excluding that which is political campaign literature or designed to aid crime prevention).

13. Posters carrying a grassroots political message are subject to restrictions, including that such signs may not be affixed for more than sixty days, 24 DCMR § 108.5.

14. Favored political speech, that which is political campaign literature or designed to aid crime prevention are exempt from the sixty day limitation and may be posted for as long as the political matter retains relevance. 24 DCMR §108.5.

15. Signs of those individuals seeking election to political office may remain posted for an indefinite period of time concluding thirty days following the general election, with no fixed limit on the number of days such signs may remain posted. 24 D.C.M.R. 108.6.

16. Signs of those individuals seeking election to political office may remain posted for many months well beyond their period of relevancy until past the general election even if the candidate has lost in the primary.

17. Signs, the content of which are "designed to aid neighborhood protection from crime," which is presumably always relevant, may be posted forever. 24 D.C.M.R. 108.5(b).

18. As such, anti-crime posters may stay up forever, but anti-war posters must be torn down even where the death toll from war is rising daily.

19. Likewise, campaign literature may stay up from the date that a candidate complies with certain registration requirements until thirty days after the *general* election.

20. Officials within the U.S. Government assert that the so-called "war on terror," of which

the war in Iraq is one component, will last a lifetime. The period of relevancy for anti-war posters and messaging exceeds sixty days.

21. The penalty for violating the postering regulations is quasi-criminal, if not draconian.

22. The fourth, and each subsequent, poster that is found within a sixty-day period to be in violation of the postering regulations subjects the responsible party to a $2,000 fine or, alternately, a period of 100 hours of servitude. One hundred such cited posters is punishable by a $200,000 fine or, alternately, 10,000 hours of labor. There are only 8,760 hours in a year.

23. This creates a staggering chill upon postering as an exercise of constitutionally protected free speech. Any person engaged in political postering, understandably, may or will post multiple posters simultaneously in order to establish visibility.

24. Any technical violation of the regulations (knowing or unknowing), multiplied by however many posters an individual may post, subjects the responsible party to crippling and bankrupting penalties or complete servitude.

25. The District also imposes strict liability upon the originator of posters that are posted in violation of the regulations, regardless of whether the originator posted the sign.

26. If an anti-war organization distributes posters and any of those posters are found to be unlawfully posted, and to therefore violate the District's litter laws, the organization itself is presumptively financially liable to the crippling fines.

27. This is analogous to subjecting *The Washington Post* to massive financial fines every time a person leaves a copy of the paper on a park bench or otherwise violates the litter laws with their use of a newspaper. The District, of course, does not impose strict liability

upon the *Post* in this type of situation.

28. The District does, however, impose liability on anti-war organizations and grassroots political organizations whose posters are wrongfully posted, regardless of whether the organization itself did the posting.

29. Constitutional law strongly disfavors, and constitutionally prohibits or restricts, the imposition of strict liability for constitutionally protected activities.

30. The District's strict liability scheme means that any organization that distributes political posters must assume the massive financial risk that any person, well intended or maliciously intended, will post their political signs in violation of the regulations.

31. This, too, creates an unconstitutional and severe chilling effect on free speech upon the reasonable person who wishes to communicate a political message through images and posters.

32. A reasonable person who wishes to communicate via posters or signs or art will be chilled in the distribution of their work where the risk is that some third-party can actually cause their bankruptcy and financial ruin through a pattern of unlawful posting.

33. Yet, the originator of signs is simply engaging in what is deeply within the American political tradition.

34. It is lawful to make political posters.

35. It is lawful to distribute signs.

36. It is unconstitutional to impose strict liability on the originator of political posters for "misuse" of their signs.

37. Certain provisions of the regulatory scheme are so vague and discretionary as to violate

due process.

38. The regulations allow the use of adhesive to affix signs.

39. The regulations require that posters be placed using sufficiently strong adhesive that will ensure that the post will not come off due to outdoor weather conditions over the period of posting. This must be sufficient to encompass weather conditions reasonably anticipated or possible during the period of posting. 24 DCMR §108.8.

40. The very next provision requires the adhesive to be sufficiently removable such that the poster can be completely removed (by unspecified means) during and after that very period. 24 DCMR §108.9.

41. The regulations allow discretion by city officials and agents in their administration of penalties and selection of targets for enforcement.

42. The regulations offer no safe harbor and no concrete guidance as to what is truly acceptable adhesive under the regulations.

43. A person seeking to use the proper adhesive, including a water-soluble paste, and who is in conformance with both requirements, is still subject to the discretionary determinations as to one *or the other* of these provisions by the District.

44. If posters stay up until they are properly taken down the District can bankrupt a person. If posters come loose, the District can bankrupt a person. It is a perfect scheme for selective enforcement..

45. This creates a severe chilling effect on the free speech of the reasonable person seeking to poster on a non-election related political issue of public import.

46. The District's postering regulatory system is precisely the sort of severe and

10

discriminatory system that is intended to be precluded by operation of the First Amendment. The Supreme Court has repeatedly warned against regulatory systems which use restrictions and exemptions to favor certain speech based on content.

> "[A]n exemption from an otherwise permissible regulation of speech may represent a governmental 'attempt to give one side of a debatable public question an advantage in expressing its views to the people." First Nat. Bank of Boston v. Bellotti, 435 U.S. 765, 785-786 (1978). Alternately, through the combined operation of a general speech restriction and its exemptions, the government might seek to select the 'permissible subjects for public debate,' and thereby to 'control . . . the search for political truth.' Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y., 447 U.S. 530, 538 (1980)." City of Ladue v. Gilleo, 512 U.S. 43, 51 (1994).

47. In the instant regulatory system, the result is that messages favored by the government, including specifically those expressed through party politics and the candidate election process, may remain posted for the full period of relevancy, but messages expressed outside of this particular system by the grassroots to the people on issues of great public concern, are subject to time restrictions and potential financial sanction. Likewise, anti-crime messages are also more protected as important speech.

48. Yet, anti-war posters merit no less protection than these other forms of political speech. Courts have acknowledged that expression that protests a decision to go to war is "absolutely pivotal speech." City of Ladue, 512 U.S. at 54. This is painfully clear to the families of those service members who have had sons and daughters kill and be killed in this war.

49. The District of Columbia, through its postering regulations, discriminates on the basis of content in favor of certain political messages, specifically where the content "of individuals seeking political office" or where the content is "designed to aid in neighborhood protection from crime," while imposing greater burdens and restrictions upon other posters, including those the content of which carries a grassroots political message not directly related to

elections. See, e.g., Bell Vista at 15 (regulations distinguishing "political campaign poster[s]" are content based)

50. Furthermore, the regulations impose registration requirements - - that a person who posts political signage - - actually register with the Mayor their name, address, telephone number and the content of their speech. 24 DCMR §108.11. This violates the protected right to engage in anonymous speech. This requirement is waived for persons who post speech in support of a candidate for office.

51. There is no compelling government interest that weighs in favor of maintaining this content-based distinction.

52. Safety concerns do not justify this distinction.

53. Security concerns do not justify this distinction.

54. Nor do aesthetics and avoidance of visual blight be an acceptable basis for this distinction. The District of Government allows massive and uncoordinated visual advertisements to both exist upon and be seen from the public ways.

55. The District of Columbia Government allows corporations to actually place corporate boxes, ostensibly newspaper boxes but actually containing only commercial advertisements, upon city sidewalks. The sides of these boxes are covered with images and advertisements. The boxes themselves create a physical obstruction and are often quite unsightly.

56. The District of Columbia allows the Business Improvement Districts to place on public lampposts large advertisements urging readers to "SHOP" within the BID.

57. The District of Columbia allows the placement of super-sized advertisements on the side of Metro bus stops, ads that urge people to purchase a particular alcohol or other product or

12

service.

58. The District of Columbia allows restaurants to place upon the public sidewalks large banners and umbrellas and other items bearing advertisements for products and services.

59. The District of Columbia allows commercial companies to place massive billboard-type advertisements covering the sides of specific buildings.

60. The District of Columbia allows a cacophony of signs and banners to be displayed from private property, all urging readers to use a particular phone system or buy a particular condominium or to purchase or advertise some good or service.

61. Within the sea of (government authorized) visual inducements to purchase or action, the drop that is represented by political posters on lamp posts does not create or add to blight. It is, however, speech that does not exist for the purpose of making a profit for a corporation or revenue for the District.

62. The existing regulatory system pertaining to postering on public space and public lamps, and appurtenances, is utterly and plainly unconstitutional and cannot be remedied through judicial limitation or interpretation. It is unconstitutionally void.

**COUNT ONE**
**(Violation of the First Amendment and Due Process Clauses)**

63. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60, as if set forth herein.

64. The District of Columbia violates the free speech and petition rights of plaintiffs arising pursuant to the First Amendment to the U.S. Constitution, the Due Process clause, and 42 U.S.C. § 1983 by maintaining an unconstitutional regulatory scheme to restrict the use of

posters upon public space to convey political ideas and messages.

65. The unconstitutional regulatory system creates an objective chill to the free speech and petition activities of a reasonable person seeking to convey political ideas and messages on issues of public import by placing posters on public space.

66. Plaintiff seeks to engage in lawful postering on issues of public import, including advocacy challenging the U.S. Government's war policies, and is harmed and/or threatened by severe financial penalty through enforcement of the postering regulations.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff requests that this Honorable Court:

A. Declare the postering regulations at 24 D.C.M.R. §108 to be unconstitutional;

B. Issue an injunction to enjoin enforcement of the existing postering regulatory provisions as applied to political speech until such time as a lawful and constitutionally sound permitting system may be enacted;

C. Award reasonable attorneys' fees and costs; and

D. Any other relief the court deems just and appropriate.

August 20, 2007

Respectfully submitted,

_____
Carl Messineo (#450033)
PARTNERSHIP FOR CIVIL JUSTICE

_____
Mara Verheyden-Hilliard (#450031)
PARTNERSHIP FOR CIVIL JUSTICE
2401 Pennsylvania Ave., NW, Ste 320
Washington, D.C. 20037
T. 202.955.5559   F. 202.955.5589

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Act Now to Stop War and End Racism Coalition //ocl

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

District of Columbia

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Partnership for Civil Justice
2401 Pennsylvania Ave., NW Ste 320
Washington, D.C. 20037
(202) 955-5559

Case: 1:07-cv-01495
Assigned To : Kennedy, Henry H.
Assign. Date : 8/20/2007
Description: Civil Rights-Non-Employ.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ⊗ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
U.S. Constitution, First Amendment and Due Process Clause; 42 U S C Section 1983 - - violation of free speech rights

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐  DEMAND $ _____  Check YES only if demanded in complaint  JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE August 20, 2007     SIGNATURE OF ATTORNEY OF RECORD  /s/ _____ Carl Messineo

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.