UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                )
ACT NOW TO STOP WAR AND END   )
RACISM COALITION, *et al.*,            )
                                                )
                    Plaintiffs,                )
                                                )
            v.                                   )        Civil Action No.07-1495 (HHK)
                                                )
DISTRICT OF COLUMBIA,          )
                                                )
                    Defendant.                )
———————————————————— )

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant the District of Columbia hereby moves this Honorable Court to dismiss the Complaint based on equitable restraint, lack of subject-matter jurisdiction and/or plaintiff's failure to state a claim upon which relief can be granted.

The grounds and the reasons are set forth more fully in the accompanying Memorandum of Points and Authorities and proposed Order.

DATE: February 6, 2008            Respectfully submitted,

                                            PETER J. NICKLES
                                            Interim Attorney General for the District of Columbia

                                            GEORGE C. VALENTINE
                                            Deputy Attorney General, Civil Litigation Division

                                            _____/s/ Ellen A. Efros_____
                                            ELLEN A. EFROS, D.C. Bar No. 250746
                                            Chief, Equity Section I
                                            441 Fourth Street, N.W., 6th Floor South
                                            Washington, D.C. 20001
                                            Telephone: (202) 442-9886
                                            Facsimile: (202) 727-0431

<u>          /s/ Andrew J. Saindon          </u>
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
ACT NOW TO STOP WAR AND END        )
RACISM COALITION, *et al.*,                        )
                                                              )
                        Plaintiffs,                         )
                                                              )
            v.                                                )            Civil Action No.07-1495 (HHK)
                                                              )
DISTRICT OF COLUMBIA,                         )
                                                              )
                        Defendant.                        )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant District of Columbia ("District" or "government"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6), moves this Court to dismiss the complaint. This memorandum of points and authorities is provided in support of the defendant's dispositive motion in accordance with LCvR 7(a).

The Court should dismiss plaintiffs' claims and decline plaintiffs' invitation to inject itself into an ongoing local proceeding, as controlling case law dictates that plaintiff Act Now To Stop War And End Racism ("ANSWER") Coalition can raise the instant constitutional claims in its pending local proceedings.

Notwithstanding this, the Court should dismiss the Complaint because plaintiff Muslim American Society Freedom Foundation ("MASFF") lacks standing, and not only has plaintiff ANSWER Coalition failed to exhaust its administrative remedies, it is precluded by *res judicata* from proceeding here.

I. Factual and Procedural Background

Plaintiff ANSWER Coalition originally filed suit on or about August 20, 2007, but failed properly to serve the defendant.[1] The instant plaintiffs filed their First Amended Complaint for Injunctive Relief ("Complaint") on December 18, 2007, again failing properly to serve the District. On or about January 17, 2008, plaintiffs served the Mayor of the District of Columbia, pursuant to Fed. R. Civ. P. 4(j)(2)(A), and it is from this date that the District calculates its time to respond.

Plaintiff ANSWER Coalition's original complaint vaguely references "recently posted anti-war posters calling for mass assembly on September 15, 2007." Original Complaint at 3. The instant First Amended Complaint does not contain that information, but plaintiff ANSWER Coalition was cited repeatedly last Summer—both before and after the filing of the instant matter—for violations of the District's postering regulations. *See* Defendant's Exhibit No. ("DEx.") 1 (sample Notices of Violation ("NOV")).[2]

---

[1]    The District reserves and does not waive any future defensive motions or pleadings and does not admit the factual allegations in plaintiff's filings except for purposes of this Motion.

[2]    The inclusion of these documents does not convert the instant motion into one for summary judgment. *See, e.g., Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (when considering a motion to dismiss for lack of subject matter jurisdiction, courts may consider certain materials outside the pleadings); *Baker v. Henderson*, 150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001) (court may consider documents "attached to or incorporated in the complaint . . . without converting the motion to dismiss into one for summary judgment.") (citations omitted). *See also Anderson v. Wiggins*, 460 F.Supp.2d 1, 6 (D.D.C. 2006) (when a motion pursuant to Fed. R. Civ. P. 12(b)(1) "focuses on the Court's power to hear the claim . . . 'the Court may give the plaintiff's factual allegations closer scrutiny and may consider matters outside the pleadings.'") (citations omitted).

Specifically, in the context of an assertion of *res judicata*, "[a] court may take judicial notice of public records from other proceedings." *Hemphill v. Kimberly-Clark Corp.*, ___ F.Supp.2d ___, 2008 WL 41426 (D.D.C. Jan. 3, 2008) (citing, *inter alia, Covad Comms. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

Those NOVs allege improper placement of posters on public property throughout the District, *i.e.*, that the posters are "affixed by adhesives that prevent their complete removal from the fixture or that do damage to the fixture." Tit. 24, D.C. Mun. Reg. § 108.9.

Plaintiff ANSWER Coalition is contesting the NOVs, and the administrative process is proceeding at the District's Office of Administrative Hearings ("OAH"). DEx. 2.

## II. <u>Argument</u>

This is not a case about the First Amendment, but about the District's authority under its police powers to combat littering.

The District has a valid esthetic interest in ensuring that public property is not permanently marred or damaged by improperly attached posters, and plaintiffs cannot invoke the First Amendment to insulate their behavior.

The Court should exercise equitable restraint and dismiss this matter, as plaintiff ANSWER Coalition is currently engaged in a local administrative enforcement action, and may raise any and all of its asserted constitutional issues there (to the extent any survived its recent, local litigation raising identical claims). Additionally, plaintiff MASFF lacks standing here, as it has never been cited under the challenged regulations, and it does not face any imminent threat of enforcement. Moreover, neither plaintiff has shown the realistic potential for a "chilling effect" on the exercise of any constitutional right.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only

dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)); *see also Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept the legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

All of the allegations in the Complaint fail as a matter of law. No factual development can resuscitate them.

A. *The Court Should Dismiss this Matter Pursuant to the Doctrine of Equitable Restraint.*

Even in light of plaintiffs' purported First Amendment claims, controlling case law mandates dismissal.

In *JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004), the operator of an adult video store brought suit under the First, Fifth, and Fourteenth Amendments, challenging the facial constitutionality of District zoning regulations as impermissibly content-based, vague, and overbroad, and sought a declaratory judgment that the regulations were unconstitutional. *Id.* at 1120. JMM also sought an injunction to bar the District's then-pending administrative enforcement actions against it. The district court *dismissed* all of plaintiff's claims for injunctive and declaratory relief, and the Circuit affirmed:

> The ongoing District of Columbia proceedings are judicial in nature and implicate important District interests; those proceedings afford [plaintiff] an adequate

opportunity to litigate its federal claims; and there are no extraordinary circumstances warranting equitable relief. Accordingly, the criteria for application of the *Younger* [*v. Harris*, 401 U.S. 37 (1971)] doctrine have been satisfied, and the district court's dismissal of [plaintiff]'s complaint was appropriate.

*Id*. at 1128; *see also Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (same).[3]

The exact same situation obtains here, as to ANSWER Coalition—its local proceedings are judicial in nature and implicate important District interests; the proceedings will also afford plaintiff ANSWER Coalition an adequate opportunity to litigate its constitutional claims. Unlike *JMM*, the instant plaintiffs do not seek damages, but only declaratory and injunctive relief, hence dismissal of all claims is appropriate.

The Circuit in *JMM Corp.* made a number of findings that are controlling here. The Circuit found that, regardless of whether local proceedings begin at the Superior Court or at the administrative level (as here), the regulated entity will have an adequate opportunity to raise its constitutional claims as defenses to any enforcement of District law. *JMM Corp.*, 378 F.3d at 1121.

Plaintiff ANSWER Coalition will have ample opportunity to raise its constitutional claims regarding the disputed regulations at the OAH, and, if it loses there, at the D.C. Court of Appeals. "Whether or not the [entity] can raise its constitutional defenses at the administrative level, 'it is sufficient under [*Younger*] that constitutional claims may be raised in state-court judicial review of the administrative proceeding.'" *Id*. (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986)).

Moreover—and even more apposite—the plaintiff in *JMM* raised claims nearly identical to those raised here, *i.e.*, that the disputed regulations impermissibly discriminate on the content

---

[3]    While occasionally referred to as "abstention," the doctrine enunciated in *Younger* and its progeny is more properly named equitable restraint. *See Bridges*, 84 F.3d at 475, n.7.

of the message conveyed, and are unconstitutionally vague. *JMM*, 378 F.3d at 1120. No matter, said the Circuit, dismissal was appropriate "even where a defendant levels a facial First Amendment challenge against a regulation and contends that its existence has a chilling effect on his free speech." *JMM Corp.*, 378 F.3d at 1122 n.11 (citing *Younger*, 401 U.S. at 54 (neither a "chilling effect" nor the possible facial unconstitutionality of a statute would justify an injunction against good-faith attempts to enforce the statute)).[4] *See also, e.g., Hatfill v. Ashcroft*, 404 F.Supp.2d 104, 118–19 (D.D.C. 2005) (plaintiff "having failed to show that his First Amendment rights were *actually chilled*, has not stated a claim for which relief can be granted . . . .") (emphasis in original).

The Circuit in *JMM* noted that that plaintiff would not suffer irreparable injury by being entirely foreclosed from obtaining an injunction in federal court, unless there were "extraordinary circumstances" warranting interference in the local enforcement action, such as bad faith, harassment, or where the law to be enforced was "flagrantly and patently" unconstitutional. *JMM*, 378 F.3d at 1122 (citing *Trainor v. Hernandez*, 431 U.S. 434, 442–43 (1977)).

The District avers that none of those factors are present here, and plaintiffs have not alleged otherwise.

"[W]here it is not clear that a particular [government action] will have any actual adverse effect on protected First Amendment liberties, the moving party must demonstrate some likelihood of a chilling effect on their rights." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d

---

[4]       As this Court well knows, the *Younger* equitable restraint doctrine was properly applied to First Amendment claims even before *JMM. See Scolaro v. District of Columbia Bd. of Elections & Ethics*, 946 F.Supp. 80 (D.D.C. 1996); *Scolaro v. District of Columbia Bd. of Elections & Ethics*, 104 F.Supp.2d 18 (D.D.C. 2000).

290, 301 (D.C. Cir. 2006). Plaintiffs have failed to show how the District's actions here have a "likelihood" of chilling their (or anyone's) rights in the future.

The Circuit in *JMM* also reaffirmed that "enforcement of [land-use] regulations, like those at issue here, constitutes an important state interest." *Id.* at 1126 (citing *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 435–37 (2002); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986)).

Here, it can no longer be reasonably questioned that the District "may legitimately exercise its police powers to advance esthetic values." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) ("it is within the constitutional power of the City to attempt to approve its appearance"); *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. 1984) ("[T]he government has a substantial interest in the preservation and enhancement of the human environment; aesthetics are a proper focus of governmental regulation.") (citing, *inter alia*, *Vincent*).

The Supreme Court has held that the First Amendment does not prohibit laws justified by a valid governmental interest when those laws do not reflect an intent to control the content of speech but rather incidentally limit unfettered exercise of the right. *See, e.g., Konigsberg v. State Bar*, 366 U.S. 36, 50 (1961)). No citizen has the right to permanently deface public property in the name of the First Amendment.

Since *JMM*, the *Younger* equitable restraint doctrine has been applied in a variety of cases to dismiss constitutional claims brought in federal court against the District by entities currently undergoing local administrative enforcement or litigation. *See, e.g., Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422 (D.C. Cir. 2006) (federal preemption claim brought by company being sued under local consumer-protection statute); *Franco v. District of*

*Columbia*, 422 F.Supp. 216 (D.D.C. 2006) ("takings" claim brought by property owner in eminent-domain litigation in Superior Court); *Bannum, Inc. v. District of Columbia*, 433 F.Supp.2d 1 (D.D.C. 2006) (equal-protection and due-process claims brought by entity attempting to avoid Superior Court's "order to vacate" property based on zoning proceeding).[5]

In light of *JMM* and its progeny, the Court should dismiss the Complaint.


B. *Plaintiff ANSWER Coalition Has Failed to Exhaust Its Administrative Remedies.*

In evaluating whether it has subject matter jurisdiction, a court must construe the complaint liberally, and give the plaintiff the benefit of all reasonable inferences. *Tozzi v. EPA*, 148 F. Supp. 2d 35, 41 (D.D.C. 2001) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). The court must view the allegations as a whole, and a conclusory averment of subject matter jurisdiction, negated by other allegations in the pleading, should result in dismissal. *See id*. at 35, 41 (citation omitted).

"It is a 'long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Association of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007) (quoting *Myers v. Bethlehem Shipbuilding Corp.,*303 U.S. 41 (1938)).

Available administrative remedies must be exhausted before a party may resort to judicial relief. *See, e.g., Comm. of Blind Vendors of D.C. v. District of Columbia*, 28 F.3d 130, 133–34 (D.C. Cir. 1994) (even if case is not governed by APA or any other statute requiring exhaustion, that doctrine applies "as a matter of judicial discretion.") (quoting *Darby v. Cisneros*, 509 U.S. 137, 154

---

[5]    For a discussion of equitable restraint in general, and an extended discussion of *JMM*, see *Tunica-Biloxi Tribe of Louisiana v. Warburton/Buttner*, 2005 WL 1902889 (D.D.C. 2005).

(1993)); *Franco v. District of Columbia*, 456 F.Supp. 2d 35, 41 (D.D.C. 2006) (plaintiffs must exhaust state-court remedies).

Plaintiff ANSWER Coalition is currently contesting several notices of infraction based on the same regulations it challenges here. It should be required to exhaust that process.

The fact that plaintiffs bring constitutional claims does not excuse the failure to exhaust. *See, e.g., Marine Mammal Conservancy, Inc. v. USDA*, 134 F.3d 409, 413 (D.C. Cir. 1998) (plaintiff "is very much mistaken in believing there is some bright-line rule allowing litigants to bypass administrative appeals simply because one or all of their claims are constitutional in nature. Exhaustion even of constitutional claims may promote many of the policies underlying the exhaustion doctrine.") (citations omitted). *See also Washington v. District of Columbia*, ___ F.Supp.2d ___, 2008 WL 108725 (D.D.C. Jan. 11, 2008) (even plaintiffs challenging District's actions as "*per se* unconstitutional" must exhaust their local administrative remedies) ("[T]he inflection of a constitutional note does not silence the command of exhaustion.") (citing *Marine Mammal*).

Those policies include giving agencies the opportunity to correct any errors, affording all parties (and the courts) the benefits of agency expertise, compiling an adequate factual record, and promoting judicial efficiency. *Id*. at 414. All those policies weigh against allowing ANSWER Coalition to avoid exhaustion here. *Cf. id.* (constitutional challenge in context "is a matter of some complexity" and "one of first impression before the agency"). Allowing the administrative process here to run its course would give subsequent reviewers "the benefit of a more thorough explanation for the result and a better understanding of the [agency's] position regarding the regulatory scheme [plaintiff] wants to challenge." *Id*. (citing, *inter alia*, *New York State Ophthalmological Soc'y v. Bowen*, 854 F.2d 1379, 1387 (D.C. Cir. 1988)).

A court may, in its discretion, excuse the exhaustion requirement, "if the litigant's interests in immediate judicial review outweigh the government's interest in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Jasperson v. Federal Bureau of Prisons*, 460 F.Supp.2d 76, 87 (D.D.C. 2006) (quoting *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004)).

As shown below, however, notwithstanding the lack of any showing of *imminent* injury, plaintiffs' purported need for immediate judicial review is insufficient to overcome the countervailing interests in judicial efficiency, comity, and the other interests detailed in *JMM*.

### C. *Plaintiff ANSWER Coalition is Precluded by* Res Judicata.

Plaintiff ANSWER Coalition previously challenged the constitutionality of the exact regulations it disputes here, in an administrative proceeding, and lost, hence it is *precluded* from relitigating those claims.

In the Spring of 2002, a group called International "Act Now to Stop War and End Racism" was cited by DPW for infractions of, and subsequently challenged the "constitutionality of[,] District of Columbia regulation 24 DCMR § 108.1 *et seq.*, a regulation promulgated to implement the District's littering laws by preventing the indiscriminate posting of signs and posters on public property." DEx. 3 at 1 (Decision and Order, Mar. 4, 2004, *International A.N.S.W.E.R. v. DPW*, D.C. Bd. of Appeals & Review ("BAR") Dkt. No. 02-5859-LC, 51 D.C. Reg. 5382 (May 21, 2004)).[6]

---

[6]    The Office of Adjudication ("OAH") was created in 2004 to, *inter alia*, hear administrative appeals formerly heard by the Board of Appeals and Review. See D.C. Official Code §§ 2-1831.02, 2-1831.03(a) (2007 Supp.).

At a contested hearing at DPW, the appellant presented its witness, Sarah Sloane, and cross-examined the DPW inspector who had issued the three infractions. *Id*. at 5383.[7]

Appellant argued that such regulation was "unconstitutional because it violates the First and Fourteenth Amendments to the U.S. Constitution[,]" *e.g.*, it "suppresses political dissent, favors some political speech over others, *i.e.*, political campaign signs are permitted but signs containing political speech unrelated to campaigns are not permitted, and deprives appellant of due process of law." *Id*.

The BAR affirmed the decision of DPW, finding substantial evidence in the record to support DPW's decision. *Id*. at 5384. The BAR also noted that while it was "authorized to consider issues of constitutionality," and both parties had extensively briefed the issue, it concluded that "this issue in this case should be left for consideration by the District of Columbia Court of Appeals if appellant so choose [sic] to file an appeal there." *Id*. at 5385.

The appellant apparently attempted to appeal the BAR decision to the D.C. Court of Appeals, but its filing was untimely, and hence dismissed. *See* DEx. 4.

The doctrine of *res judicata* prevents repetitious litigation; it consists of issue preclusion (also known as collateral estoppel) and claim preclusion. *NextWave Personal Communication, Inc. v. FCC*, 254 F.3d 130, 142 (D.C. Cir. 2001), *affirmed in relevant part*, 537 U.S. 293 (2003).

"*Res judicata* . . . prevents the consideration not only of those issues which were litigated but also those which might have been litigated in the first action." *Woodward & Lothrop, Inc. v. Schnabel*, 593 F.Supp. 1385, 1398 (D.D.C. 1984) (quoting *Thornton v. Little Sisters of the Poor*, 380 A.2d 593, 595 (D.C. 1977)).

---

[7]    Sarah Sloane is also the person on whom the recent ANSWER Coalition infractions were served. *See* DEx. 1.

Under claim preclusion, "a final judgment on the merits of an action precludes the parties

or their privies from relitigating issues that were or *could have been raised* in that action." *Drake*

*v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (emphasis in original) (quoting *Allen v. McCurry*, 449

U.S. 90, 94 (1980)).[8]

In comparison, to establish issue preclusion, a party must show: (1) that the same issue

now being raised was previously contested and submitted for judicial review, (2) the issue was

actually and necessarily determined by a court of competent jurisdiction in the prior case, and (3)

preclusion would not work a basic unfairness to the party bound by the first decision. *Beverly*

*Health & Rehabilitation Svcs, Inc. v. NLRB*, 317 F.3d 316, 322 (D.C. Cir. 2003) (*citing Kremer*

*v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)).

Plaintiff Answer Coalition cannot *again* argue the constitutionality of these regulations.

"If a new legal theory or factual assertion put forward in the second action is related to the

subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it

*could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact

---

[8]      Plaintiffs may claim that International A.N.S.W.E.R. and the ANSWER Coalition
are not the same entity. The District avers that those entities are obviously in privity, and hence
preclusion applies. *Cf. Taylor v. Blakey*, 490 F.3d 965, 971 (D.C. Cir. 2007) ("virtual
representation" exists to preclude subsequent litigation, where parties have identical interests,
adequate representation, and some "affirmative link" between the litigant and his putative
proxy). Those elements exist here in abundance; the two entities seek the *same* result, had
substantially the *same* incentive to achieve it, *id*. at 972, were represented by the *same* counsel,
and have a "close relationship." *Id*. at 975. Plaintiff ANSWER Coalition's website directs
inquiries to "info@internationalanswer.org" or "www.internationalanswer.org," and input of the
address *http://www.internationalanswer.org/* brings the browser to the ANSWER Coalition's
website. *See* http://answer.pephost.org/site/PageServer?pagename=ANS_contact_us  (as  of
January 29, 2008).
        Moreover, case law suggests that the addition of plaintiff MASFF here could be seen as
"tactical maneuvering," *i.e.*, conduct "designed unfairly . . . to obtain multiple bites of the
litigatory apple," which further reinforces the finding of privity. *Taylor*, 490 F.3d at 976
(citations omitted).

expressly pleaded or otherwise urged." *Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002) (quoting *Yamaha Corp.*, 961 F.2d at 257–58)).

Because plaintiff ANSWER Coalition raised the identical constitutional issues previously, but failed timely to appeal them to the DCCA, it is precluded from doing so here.

The principles of *res judicata* reduce unnecessary litigation, "but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen*, 449 U.S. at 95–96. *See also Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997) (*res judicata* exists in part to shield parties from duplicative and vexatious litigation).

Local administrative agency determinations are given preclusive effect when the agency is acting in a judicial capacity, and the litigants had a fair opportunity to litigate all the issues. *Fonville v. District of Columbia*, 448 F.Supp.2d 21, 25 (D.D.C. 2006) (citing *University of Tennessee v. Elliott*, 478 U.S. 788 (1986)). *See also Elkins v. District of Columbia*, ___ F.Supp.2d ___, 2007 WL 4329477 (D.D.C. Dec 12, 2007) (factual findings by D.C.'s administrative agencies acting in a judicial capacity are entitled to preclusive effect, so long as the proceeding was "the essential equivalent of a judicial proceeding.") (quoting *Winder v. Erste*, 511 F.Supp. 2d 160, 176 (D.D.C. 2007)).

ANSWER Coalition's previous appeals of the infractions had all the elements necessary for preclusive effect—"a full adversary hearing, including representation by counsel, presentation of direct and rebuttal evidence, presentation of witnesses and cross-examination of opposing-party's witnesses, and the opportunity to present arguments and briefs." *Fonville*, 448 F.Supp.2d at 25 (citing *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C.Cir.1987)).

Plaintiff ANSWER Coalition appealed *International A.N.S.W.E.R.* to the D.C. Court of Appeals, which was empowered to address all of its purported constitutional concerns, as *JMM*

-13-

holds. The appeal was dismissed, however, because ANSWER's appeal was untimely, hence it is precluded from raising those same issues here.[9]

"A new legal theory does not amount to a new claim, and the bar of *res judicata* cannot be overcome by ingenious adventuring, over a period of time, on new paths to the same goal." *Woodward & Lothrop*, 593 F.Supp. at 1398 (citing *Migra v. Warren City School District Bd. of Ed.*, 465 U.S. 75, 81 (1984)).

Because plaintiff ANSWER Coalition received a judgment "on the merits" in the previous BAR litigation on the same claims it brings here, the instant plaintiffs are precluded from relitigating them. *See, e.g., Wood v. Several Unknown Metropolitan Police Officers*, 835 F.2d 340, 343 (D.C. Cir. 1987) (plaintiff is precluded "from litigating against the municipality in federal court matters he placed at issue in the District of Columbia proceeding.").

Consequently, the Court should dismiss plaintiffs' claims against the District.


D. *Plaintiff MASFF Lacks Standing.*

Plaintiff MASFF lacks standing because its allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001).

---

[9]    International ANSWER's appeal was untimely filed, hence it was dismissed for "lack of jurisdiction." DEx. 4. While that appeal was clearly not dismissed pursuant to Fed. R. Civ. P. 41(b), that rule suggests that such involuntary dismissals should not ordinarily preclude a second action, which proposition "means only that the dismissal permits a second action on the same claim that corrects the deficiency found in the first action." 18 Wright, Miller & Cooper, Fed. Prac. & Proc. § 4436 at 149 (2d ed. 2002). Of course, International ANSWER could not have "corrected" its timing error, hence the dismissal was analogous to one on statute-of-limitation grounds. For *res judicata* purposes, "[t]he rules of finality . . . treat a dismissal on statute-of-limitations grounds . . . as a judgment on the merits." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)).

-14-

Plaintiff ANSWER Coalition was cited under 24 DCMR § 108.1 *et seq.* for violations of the District's postering regulations. There are no allegations, or any indications in the record, that MASFF is planning imminently to post any posters anywhere in the District, much less that it intends to improperly attach them to public property.

The "chilling effect" alleged here cannot reasonably be attributed to *any* enforcement of District postering regulations, but—if anything—only to the *specific* enforcement taken against ANSWER for extensive, city-wide littering with an improper adhesive.

Unlike plaintiff ANSWER Coalition, it does not appear that plaintiff MASFF has *ever* been cited for violations of any of the disputed regulations, and there are no specific allegations that it currently plans to engage in actions that may trigger those regulations, or has ever even distributed or posted any posters in the District. As such, its alleged threatened harms are entirely speculative.

A federal court's jurisdiction can only be invoked when a plaintiff has suffered some threatened or actual injury resulting from a defendant's putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

"Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted). *See also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (*quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Plaintiff MASFF has not shown any "certainly impending" injury. To have standing, a plaintiff must allege a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *Field v. Brown*, 610 F.2d 981, 990 (D.C. Cir. 1980). *See also Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) ("The Constitution requires a concrete and particularized injury.").[10]

"'[S]ome day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of . . . 'actual or imminent injury . . . .'" *ANSWER Coalition v. Kempthorne*, 493 F.Supp.2d 34, 45 (D.D.C. 2007) (quoting *Lujan*, 504 U.S. at 564) (emphasis in original)).

Plaintiffs may argue, as they did in *Kempthorne*, that MASFF has standing to challenge the postering regulations because, in the First Amendment context, the disputed law's "very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id*. at 46 (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988)). *See also Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, n. 5 (1984).

Simply raising a First Amendment challenge, however, is insufficient, alone, to support standing. As the Circuit has repeatedly clarified, the "relaxed" standing analysis seemingly implicated in *American Booksellers* and related cases applies to *criminal* statutes. *See Parker v.*

---

[10]    Separation of powers principles underlie the concept of standing, and reflect that courts should not prematurely interfere "with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely. Accordingly, the courts should never 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Field*, 610 F.2d at 990 (*quoting Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 72 (1961).

*District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *cert. granted sub. nom., Heller v. District of Columbia*, ___ U.S. ___ (Nov. 20, 2007).

The Circuit in *Parker* explained that the *American Booksellers* plaintiffs had standing to challenge a criminal statute regulating the display of certain types of sexually explicit material, thus it was sufficient for those plaintiffs to allege "an actual and well-founded fear that the law will be enforced against them . . . ." *Parker*, 478 F.3d at 375. Moreover, the Circuit explained that the Supreme Court in *American Booksellers* was concerned that the disputed statute "might chill speech without any prosecution ever taking place, thereby creating a wrong without remedy if pre-enforcement standing were denied." *Id.* (citation omitted).

Here, the regulations at issue are manifestly *not* criminal in nature. *See* D.C. Official Code § 8-802 (2007 Supp.) (infractions pursuant to, *inter alia*, 24 DCMR § 108, "shall be subject to the civil administrative system and the civil sanctions provided in this chapter."). Moreover, plaintiff MASFF cannot show an actual and well-founded fear that 24 DCMR § 108 *et seq*. will be enforced against them, because there are no allegations that the posters they *may* post in the future *may* be improperly attached to public property.

Additionally, if MASFF is denied pre-enforcement standing here, no "wrong without remedy" will be created, because ANSWER Coalition will be able to mount the *identical* challenges to the regulations, in the form of a defense in its ongoing local proceeding. *See JMM*, 378 F.3d at 1121. The Circuit has also clarified that, notwithstanding plaintiffs' preferred hierarchy, "the injury–in–fact requirement should be applied uniformly over the First and Second Amendments (and presumably all other constitutionally protected rights)." *Parker*, 478 F.3d at 375 n.1 (citing *Seegars v. Gonzalez*, 396 F.3d 1248, 1254 (D.C. Cir. 2005)).

Plaintiff MASFF cannot challenge the referenced District regulations because it has never been cited under them, and it cannot "demonstrate a realistic danger of sustaining a direct injury as a result of the [regulations'] operation or enforcement." *Babbitt*, 442 U.S. at 298 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Leaving aside the First Amendment issues, to establish the standing required to maintain this pre-enforcement challenge, MASFF must demonstrate by specific facts that it faces a "credible and immediate" threat of enforcement. *See, e.g., Babbitt*, 442 U.S. at 298; *Seegars*, 396 F.3d at 1251; *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (party must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement).

To show preenforcement standing, then, a plaintiff must show "a threat of prosecution reaching the level of imminence required by *Navegar*." *Seegars*, 396 F.3d at 1255. Analyzing that alleged threat of prosecution "is a factual and case-specific one" requiring courts to look at a number of factors. *Navegar*, 103 F.3d at 999 (*citing, inter alia, Lion Mfg. v. Kennedy*, 330 F.2d 833, 839 n.10 (D.C. Cir. 1964) (federal court "intervention must, at the very least, rest upon a showing of an immediate and tangible danger to the person assertedly apprehensive of prosecution.")).[11]

---

[11]    *See also Lion Mfg.*, 330 F.2d at 839–40:

Just as the complaint alleges no specific threat of prosecution, so it does not allege facts which raise such threat.

* * *

To assert that [legislation] is unconstitutional on its face is a formidable contention under any circumstances; the least that can be required of one who makes it is that he relate himself clearly to the impingement of the statute. This, in order to create a meaningful lawsuit within our adversary tradition, calls for more

MASFF cannot meet this burden. *See Navegar*, 103 F.3d at 999 ("plaintiffs allege no prior threats [of prosecution] against them or any characteristics indicating an especially high probability of enforcement against them."). In *Navegar*, for example, the court found that a threat of enforcement of a federal law was not sufficiently "credible" even when some plaintiff firearm-manufacturers had personally been visited by ATF agents and notified of the disputed law's enactment. 103 F.3d at 1000.

Similarly, in *Seegars*, the Circuit found that plaintiffs, to establish standing to challenge a District law imposing criminal penalties, "were required to show that the District had singled them out for prosecution . . . ." *Parker*, 478 F.3d at 374 (discussing *Seegars*). Because the *Seegars* plaintiffs "could show nothing more than a general threat of prosecution by the District," they lacked standing. *Id*.

The identical situation obtains here. Plaintiff MASFF has failed to show any "credible and immediate" threat of enforcement by the District. MASFF has not shown that it "ha[s] been singled out or uniquely targeted by the D.C. government for prosecution[,]" nor has it pointed to any "actual and specific" threats of enforcement, which showing is "insufficient" to demonstrate standing. *Parker*, 478 F.3d at 375.

Plaintiff MASFF can present no competent evidence showing a credible threat of enforcement of the disputed District regulations against it, hence it lacks standing. *See, e.g., Seegars*, 396 F.3d at 1253 (this Circuit's preenforcement standing cases "appea[r] to demand more than a credible statement by the plaintiff of intent to commit violative acts and a

---

than a mere prayer for an adjudication of the statute's invalidity now in order that one may be spared any prospect, however remote, of being obliged to defend oneself later.

*Id*. (footnote omitted).

conventional background expectation that the government will enforce the law.") (*citing Navegar*).

Plaintiffs' First Amendment allegations here are simply insufficient to support standing. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm . . . ."); *DKT Memorial Fund, Ltd. v. USAID*, 887 F.2d 275, 298–99 (D.C. Cir. 1989) (despite initial rejection of claim at trial court, an opportunity to amend, and then remand, plaintiffs "still com[e] before us with a bare allegation of 'subjective chill'") ("Plaintiffs were on quite adequate notice long ago of the need for such specific present harm and have demonstrated none.") (citing *Laird*).

### E. *Plaintiff MASFF's Claims are Unripe.*

Plaintiff MASFF lacks standing because it has failed to allege—much less demonstrate— a "realistic danger" that the disputed regulations will be applied so as to compromise its (or anyone else's) First Amendment rights.

Thus, MASFF's claims are entirely speculative, depending on the hypothetical possibilities that it *may* distribute and post posters on public property, which *may* be mounted improperly, for which it *may* be cited by the District. Such a chain of conjecture is insufficient to support standing. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

Under the ripeness doctrine, a court must examine the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nevada v.*

*Department of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (quoting *Eagle-Picher Indus., Inc. v.*

*EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985)). The Supreme Court has elaborated, concluding that in

ripeness challenges a court must consider "(1) whether delayed review would cause hardship to

the plaintiff[;] (2) whether judicial intervention would inappropriately interfere with further

administrative action; and (3) whether the courts would benefit from further factual development

of the issues presented." *Nevada*, 457 F.3d at 84 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra*

*Club*, 523 U.S. 726, 733 (1998)).

Here, delayed review would cause no hardship at all to MASFF, because it has never

been cited under the disputed regulations, and has not alleged or shown any intent to engage in

any action that might trigger those regulations. Moreover, as explained *supra*, judicial

intervention by this Court would inappropriately interfere with ongoing local proceedings in

ANSWER Coalition's identical challenge. Similarly, the "further factual development"

contemplated in the ripeness doctrine will occur in the local proceedings. *See Texas*, 523 U.S. at

301 (postponing adjudication gives state courts the opportunity to resolve any constitutional

issues that may be present).

To the extent even viable, MASFF's claims are not ripe.


III. Conclusion

For the foregoing reasons, the defendant moves to dismiss the Complaint. A proposed

Order is attached hereto.

DATE: February 6, 2008           Respectfully submitted,

                                 PETER J. NICKLES
                                 Interim Attorney General for the District of Columbia

                                 GEORGE C. VALENTINE
                                 Deputy Attorney General, Civil Litigation Division

_____/s/ Ellen A. Efros_____
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

District's Exhibit No. 1

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF VIOLATION

NOTICE NO.: K 137190

[X] DEPARTMENT OF PUBLIC WORKS    [ ] DEPARTMENT OF TRANSPORTATION    DATE OF SERVICE: 08 08 07

**RESPONDENT'S NAME:** ANSWER COALITION C/O SARAH SLOAN

**ADDRESS:** 1247 E ST SE

**CITY:** WASH     **STATE:** DC     **ZIP CODE:** 20003

**RESPONDENT IS:** [ ] OWNER   [ ] AGENT   [ ] PERMIT HOLDER [ ] CONTRACTOR [ ] SUB-CONTRACTOR
       [ ] VEHICLE OPERATOR [ ] OCCUPANT [ ] VEHICLE OWNER [X] VIOLATOR

**DATE OF VIOLATION:** 8 6 07    **TIME OF VIOLATION:** 110 [ ] AM [X] PM    **D.C. CODE AND/OR REGULATION VIOLATED:** 24 DCMR 108.91 RG 810A

**VIOLATION LOCATION:** 1700 TAYLOR ST    [ ] NW [X] NE [ ] SE [ ] SW
   [ ] OPPOSITE   [ ] REAR   [ ] ALLEY   [ ] FRONT   [ ] RIGHT   [ ] LEFT   [ ] SIDE   [X] AT
     PARCEL _____ SQUARE 4168 LOT PUBLIC SPACE WARD 5

**VIOLATION:** [ ] RESIDENTIAL [ ] COMMERCIAL [X] GENERAL [ ] RECYCLING [ ] RIGHT OF WAY
**NATURE OF VIOLATION:** POSTING NOTICES ON LAMP POST (DC PROPERTY)

SAME VIOLATION WITHIN 60 DAYS/3 YEARS (circle)    [ ] YES [X] NO
Additional explanatory documentation is attached: [X] YES [ ] NO

**FINE:** [ ] $75 [X] $150 [ ] $300 [ ] $600 [ ] $900 [ ] $1,000 [ ] $2,000    OTHER: $_____

**ABATEMENT REQUIRED?** YES [X] NO [ ]    WITHIN [ ] 14 DAYS [X] 72 HOURS
**IF ABATEMENT IS REQUIRED, YOU MUST, IN ADDITION TO PAYING APPLICABLE FINES AND PENALTIES:**
REMOVE ALL SIGNS INDICATING "MARCH TO STOP THE WAR" GLUED TO PUBLIC SPACE

**FOR QUESTIONS REGARDING ABATEMENT OR TO ARRANGE FOR REINSPECTION PLEASE CALL:**
(202) 645-7050 FOR DEPARTMENT OF TRANSPORTATION OR (202) 645-7190 FOR DEPARTMENT OF PUBLIC WORKS.

I personally observed and/or determined that the violation charged above has been committed. I further certify, under penalty of perjury that [CHECK ONE]: [ ] the Respondent is not in the military service of the United States; [ ] the Respondent is in the military service of the United States; [X] I am unable to determine whether the respondent is in the military service of the United States.

_B.A. Brooke_    B.A. BROOKE    8/6/07    DW412
Inspector's/Investigator's Signature    Print Name    Date    Badge/ID

You are charged with violating the District of Columbia law or regulation stated above. You MUST SIGN and RETURN this form WITHIN 14 DAYS of the date of service NOTED ABOVE. You must also indicate below whether you **ADMIT, ADMIT WITH EXPLANATION** or **DENY**. For additional instructions, please see reverse side.

    If you DENY this violation, you must appear for a hearing. You will receive a separate order from the Office of Administrative Hearings advising you where and when to appear for your hearing.

    **ANSWER:** [ ] **ADMIT** (Pay Fine) [ ] **DENY** (Appear for a Hearing) [ ] **ADMIT WITH EXPLANATION** (Hearing by Mail)
If abatement of the nuisance is required, I: [ ] **HAVE** [ ] **HAVE NOT** completed the required abatement action

_____     _____     _____
Respondent's Signature     Print Name     Date

Form OAH-435 (REV. 12-04)    OAH (WHITE)    RESPONDENT (YELLOW)    ENFORCEMENT (PINK) / (GOLDENROD)

AT 1700 TAYLOR ST NE
8/6/07     1:10 PM
NOV K 137190     G810A
B. A. BROOME OW 412
S-4168



AT 1700 TAYLOR ST NE
8/6/07     1:10 PM
NOV K 137190    G810A
B. A. BROOME OW 412
S-4168



★★★

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF VIOLATION

NOTICE NO.: **K 137191**

[✗] DEPARTMENT OF PUBLIC WORKS  [ ] DEPARTMENT OF TRANSPORTATION         DATE OF SERVICE: 8, 08, 07

RESPONDENT'S NAME: _ANSWER COALITION c/o SARAH SLOAN_

ADDRESS: _1247 E ST SE_

CITY: _WASH_                STATE: _DC_                ZIP CODE: _20003_

RESPONDENT IS: [ ] OWNER   [ ] AGENT   [ ] PERMIT HOLDER [ ] CONTRACTOR   [ ] SUB-CONTRACTOR
[ ] VEHICLE OPERATOR   [ ] OCCUPANT   [ ] VEHICLE OWNER   [✗] VIOLATOR

DATE OF VIOLATION: _8/6/07_     TIME OF VIOLATION: _1110_ [ ] AM [✗] PM     D.C. CODE AND/OR REGULATION VIOLATED: _24 DCMR 108.9 / GE/DA_

VIOLATION LOCATION: _1606 MICHIGAN AVE_     [ ] NW [✗] NE [ ] SE [ ] SW
[ ] OPPOSITE     [ ] REAR     [ ] ALLEY     [ ] FRONT     [ ] RIGHT     [ ] LEFT     [ ] SIDE     [✗] AT
PARCEL _____ SQUARE _4168_ LOT PUBLIC SPACE WARD _5_

VIOLATION: [ ] RESIDENTIAL  [ ] COMMERCIAL  [✗] GENERAL  [ ] RECYCLING  [ ] RIGHT OF WAY

NATURE OF VIOLATION: _POSTING NOTICES ON LAMP POST (DC PROPERTY)_

SAME VIOLATION WITHIN 60 DAYS/3 YEARS (circle)     [ ] YES [✗] NO
Additional explanatory documentation is attached:     [✗] YES   [ ] NO

FINE:     [ ] $75   [✗] $ 150 [ ] $300   [ ] $600   [ ] $ 900 [ ] $1,000 [ ] $2,000     OTHER: $_____

---

ABATEMENT REQUIRED? YES [✗]  NO [ ]     WITHIN [ ] 14 DAYS     [✗] 72 HOURS
**IF ABATEMENT IS REQUIRED, YOU MUST, IN ADDITION TO PAYING APPLICABLE FINES AND PENALTIES:**
_REMOVE ALL SIGNS INDICATING "MARCH TO STOP THE WAR"_
_GLUE ONTO PUBLIC SPACE_

FOR QUESTIONS REGARDING ABATEMENT OR TO ARRANGE FOR REINSPECTION PLEASE CALL:
(202) 645-7050 FOR DEPARTMENT OF TRANSPORTATION OR (202) 645-7190 FOR DEPARTMENT OF PUBLIC WORKS.

I personally observed and/or determined that the violation charged above has been committed. I further certify, under penalty of perjury that [CHECK ONE]: ☐ the Respondent is not in the military service of the United States; ☐ the Respondent is in the military service of the United States; [✗] I am unable to determine whether the respondent is in the military service of the United States.

_B.A. BROOME_     _5/6/07_     _CNV 412_
Inspector's/Investigator's Signature     Print Name     Date     Badge/ID

You are charged with violating the District of Columbia law or regulation stated above. You MUST SIGN and RETURN this form WITHIN 14 DAYS of the date of service NOTED ABOVE. You must also indicate below whether you **ADMIT, ADMIT WITH EXPLANATION** or **DENY**. For additional instructions, please see reverse side.

If you DENY this violation, you must appear for a hearing. You will receive a separate order from the Office of Administrative Hearings advising you where and when to appear for your hearing.

**ANSWER:** [ ] **ADMIT** (Pay Fine)  [ ] **DENY** (Appear for a Hearing)  [ ] **ADMIT WITH EXPLANATION** (Hearing by Mail)
If abatement of the nuisance is required, I: [ ] **HAVE** [ ] **HAVE NOT** completed the required abatement action

Respondent's Signature          Print Name          Date

Form OAH-435 (REV. 12-04)     OAH (WHITE)     RESPONDENT (YELLOW)     ENFORCEMENT (PINK) / (GOLDENROD)

AT 1600 MI AVE NE
8/6/07      1:10 PM
NOV K 137191    G810A
B. A. BROOME OW 412
S-4168



AT 1600 MI AVE NE
8/6/07     1:10 PM
NOV K 137191    G810A
B. A. BROOME OW 412
S-4168



★★★

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF VIOLATION

NOTICE NO.: K 137587

☐ DEPARTMENT OF PUBLIC WORKS   ☐ DEPARTMENT OF TRANSPORTATION   DATE OF SERVICE: 8, 20, 07

RESPONDENT'S NAME: Answer Coalition c/o Sarah Sloan

ADDRESS: 1247 E Street SE

CITY: Washington   STATE: DC   ZIP CODE: 2003

RESPONDENT IS: [✓] OWNER  [ ] AGENT  [ ] PERMIT HOLDER  [ ] CONTRACTOR  [ ] SUB-CONTRACTOR
[ ] VEHICLE OPERATOR  [ ] OCCUPANT  [ ] VEHICLE OWNER  [ ] VIOLATOR

DATE OF VIOLATION: 8/20/07   TIME OF VIOLATION: 11:50 [✓]AM [ ]PM   D.C. CODE AND/OR REGULATION VIOLATED: 98104 / 24DCMC100.9

VIOLATION LOCATION: 5300 Block of North Capitol St   [✓] NW [ ] NE [ ] SE [ ]SW

[ ] OPPOSITE  [ ] REAR  [ ] ALLEY  [✓] FRONT  [ ] RIGHT  [ ] LEFT  [ ] SIDE  [✓] AT
PARCEL ____ SQUARE 3703 LOT pub. space WARD 4

VIOLATION: [ ] RESIDENTIAL [ ] COMMERCIAL [✓] GENERAL [ ] RECYCLING [ ] RIGHT OF WAY

NATURE OF VIOLATION: Signs advertisements and posters shall not be affixed by adhesives that prevent their complete removal from the fixture or to damage to fixture

SAME VIOLATION WITHIN (60 DAYS) 2 YEARS (circle)   [ ] YES [✓] NO
Additional explanatory documentation is attached:   [✓] YES [ ] NO

FINE: [ ]$75 [✓]$150 [ ]$300 [ ]$600 [ ]$900 [ ]$1,000 [ ]$2,000   OTHER: $____

ABATEMENT REQUIRED? YES [✓] NO [ ]   WITHIN [ ] 14 DAYS [✓] 72 HOURS
IF ABATEMENT IS REQUIRED, YOU MUST, IN ADDITION TO PAYING APPLICABLE FINES AND PENALTIES:

Remove all signs indicating "March to Stop the War" Glue-on public Space

FOR QUESTIONS REGARDING ABATEMENT OR TO ARRANGE FOR REINSPECTION PLEASE CALL:
(202) 645-7050 FOR DEPARTMENT OF TRANSPORTATION OR (202) 645-7190 FOR DEPARTMENT OF PUBLIC WORKS.

I personally observed and/or determined that the violation charged above has been committed. I further certify, under penalty of perjury that [CHECK ONE]: ☐ the Respondent is not in the military service of the United States; ☐ the Respondent is in the military service of the United States; ☐ I am unable to determine whether the respondent is in the military service of the United States.

Kelly Harris   KELLY HARRIS   8/20/07   OW#423
Inspector's/Investigator's Signature   Print Name   Date   Badge/ID

You are charged with violating the District of Columbia law or regulation stated above. You MUST SIGN and RETURN this form WITHIN 14 DAYS of the date of service noted above. You must also indicate below whether you ADMIT, ADMIT WITH EXPLANATION or DENY. For additional instructions, please see reverse side.

If you DENY this violation, you must appear for a hearing. You will receive a separate order from the Office of Administrative Hearings advising you where and when to appear for your hearing.

ANSWER: [ ] ADMIT (Pay Fine) [ ] DENY (Appear for a Hearing) [ ] ADMIT WITH EXPLANATION (Hearing by Mail)
If abatement of the nuisance is required, I: [ ] HAVE [ ] HAVE NOT completed the required abatement action

Respondent's Signature   Print Name   Date

Form OAH-435 (REV. 12-04)   OAH (WHITE)   RESPONDENT (YELLOW)   ENFORCEMENT (PINK) / (GOLDENROD)

5300 Block of North Capitol Street NE
G810A
Monday August 20, 2007 7:30am
NOV# K137587
Inspector K. Harris OW#423



# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF VIOLATION

★★★

NOTICE NO.: K 134916

| DEPARTMENT OF PUBLIC WORKS | DEPARTMENT OF TRANSPORTATION | DATE OF SERVICE: 2/9/07 |

RESPONDENT'S NAME: Answer Coalition c/o Sarah Sloan

ADDRESS: 1247 E Street SE

CITY: Washington   STATE: DC   ZIP CODE: 20003

RESPONDENT IS: [ ] OWNER  [ ] AGENT  [ ] PERMIT HOLDER  [ ] CONTRACTOR  [ ] SUB-CONTRACTOR
[ ] VEHICLE OPERATOR  [ ] OCCUPANT  [ ] VEHICLE OWNER  [✓] VIOLATOR

DATE OF VIOLATION: 8/23/07   TIME OF VIOLATION: 12:57 [ ]AM [✓]PM   D.C. CODE AND/OR REGULATION VIOLATED: 6-810A  10 DCMR 108.9

VIOLATION LOCATION: 4300 Block of Jennifer St   [ ]NW [ ]NE [ ]SE [ ]SW

[ ] OPPOSITE  [ ] REAR  [ ] ALLEY  [ ] FRONT  [ ] RIGHT  [ ] LEFT  [ ] SIDE  [✓]AT

PARCEL ___ SQUARE 1661 LOT ___ WARD 3

VIOLATION: [ ] RESIDENTIAL  [ ] COMMERCIAL  [✓] GENERAL  [ ] RECYCLING  [ ] RIGHT OF WAY

NATURE OF VIOLATION: Signs, advertisements, and poster shall not be affixed by adhesives that prevent their complete removal from the fixture or shall do any damage to the fixture.

SAME VIOLATION WITHIN 30 DAYS 3 YEARS (circle) [ ] YES [✓] NO

Additional explanatory documentation is attached: [✓] YES [ ] NO

FINE: [ ] $75  [✓] $150  [ ] $300  [ ] $600  [ ] $900  [ ] $1,000  [ ] $2,000  OTHER: $_____

ABATEMENT REQUIRED? YES [✓] NO [ ]   WITHIN [ ] 14 DAYS  [✓] 72 HOURS
IF ABATEMENT IS REQUIRED, YOU MUST, IN ADDITION TO PAYING APPLICABLE FINES AND PENALTIES:

Remove all signs indicating "March to Stop the War" glued on public space.

FOR QUESTIONS REGARDING ABATEMENT OR TO ARRANGE FOR REINSPECTION PLEASE CALL:
(202) 645-7050 FOR DEPARTMENT OF TRANSPORTATION OR (202) 645-7190 FOR DEPARTMENT OF PUBLIC WORKS.

I personally observed and/or determined that the violation charged above has been committed. I further certify, under penalty of perjury that [CHECK ONE]: [ ] the Respondent is not in the military service of the United States; [ ] the Respondent is in the military service of the United States; [✓] I am unable to determine whether the respondent is in the military service of the United States.

Inspector's/Investigator's Signature   Print Name: L. Douglas   Date: 8/23/07   Badge/ID: DW405

You are charged with violating the District of Columbia law or regulation stated above. You MUST SIGN and RETURN this form WITHIN 14 DAYS of the date of service NOTED ABOVE. You must also indicate below whether you **ADMIT, ADMIT WITH EXPLANATION** or **DENY**. For additional instructions, please see reverse side.

If you DENY this violation, you must appear for a hearing. You will receive a separate order from the Office of Administrative Hearings advising you where and when to appear for your hearing.

ANSWER: [ ] ADMIT (Pay Fine)  [ ] DENY (Appear for a Hearing)  [ ] ADMIT WITH EXPLANATION (Hearing by Mail)
If abatement of the nuisance is required, I: [ ] HAVE  [ ] HAVE NOT completed the required abatement action

Respondent's Signature   Print Name   Date

Form OAH-435 (REV. 12-04)   OAH (WHITE)   RESPONDENT (YELLOW)   ENFORCEMENT (PINK) / (GOLDENROD)   8/24/07 K

4300 block Jennifer St., NW
8/23/07 @ 12:57 pm
Inspector Douglas

Square # 1661                    Lot # P/S



NOV # 13496

District's Exhibit No. 2

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
441 4th Street, NW, Suite 870-N
Washington, DC 20001-2714
202-741-5208
Fax: 202-724-4129

| | |
|---|---|
| DISTRICT OF COLUMBIA | |
| DEPARTMENT OF PUBLIC WORKS | |
| Petitioner, | |
| | |
| v. | Case No.: PW-V-07-K136271, *et al.*[1] |
| | |
| ANSWER COALITION | |
| Respondent | |
| DISTRICT OF COLUMBIA | |
| DEPARTMENT OF PUBLIC WORKS | |
| Petitioner, | |
| | |
| v. | Case Nos.: PW-V-07-K136786 |
| | PW-V-07-K136787 |
| ALLIANCE FOR GLOBAL JUSTICE | |
| Respondent | |
| DISTRICT OF COLUMBIA | |
| DEPARTMENT OF PUBLIC WORKS | |
| Petitioner, | |
| | |
| v. | |
| | |
| PARTY FOR SOCIALISM AND | |
| LIBERATION | |
| Respondent | |

## ORDER FOR CONTINUANCE OF MEDIATION

In this case, the parties have agreed to participate in mediation. A mediation session has

been scheduled for December 11, 2007 at 9:30 AM, at 441 4th Street, N.W., Suite 870 – North,

Washington, D.C. The Order scheduling mediation advised the parties that they could contact

---

[1] The docket numbers of the Notices of Violation issued to the Answer Coalition are listed in
Appendix A to this Order.

Case Nos. PW-V-07-K136271, *et al.*

the undersigned mediator directly by telephone for the sole purpose of rescheduling the date and time of the mediation session.

On December 7, 2007, Carl Messineo, Esq., counsel for Respondents, contacted this mediator by telephone to request that the mediation session be continued for one week. Mr. Messineo stated that counsel has a court conflict that lasts the entire week of December 10-14, 2007. Mr. Messineo contacted counsel for the Government and determined that there is no objection to the request to continue the mediation for one week.

Based on this request, I will continue the mediation session to Wednesday, December 19, 2007 at 1:00 PM. Please note the new location: 441 4th Street, N.W., **Suite 540 – South,** Washington, D.C. 20001.

Therefore, it is, this 7th day of December, 2007:

**ORDERED,** that the mediation session is **CONTINUED** to December 19, 2007, at 1:00 PM, at the Office of Administrative Hearings, 441 4th Street, N.W., **Suite 540 – South,** Washington, D.C. 20001. **[NOTE NEW LOCATION]** The parties shall ensure that an individual with settlement authority attends the mediation session.

Paul B. Handy
Administrative Law Judge

## APPENDIX A
## CONSOLIDATED CASES

| | | |
|---|---|---|
| PW-V-07-K134173 | PW-V-07-K137093 | PW-V-07-K137254 |
| PW-V-07-K134174 | PW-V-07-K137094 | PW-V-07-K137255 |
| PW-V-07-K134908 | PW-V-07-K137095 | PW-V-07-K137256 |
| PW-V-07-K134909 | PW-V-07-K137097 | PW-V-07-K137257 |
| PW-V-07-K134910 | PW-V-07-K137098 | PW-V-07-K137258 |
| PW-V-07-K134911 | PW-V-07-K137099 | PW-V-07-K137259 |
| PW-V-07-K134912 | PW-V-07-K137100 | PW-V-07-K137260 |
| PW-V-07-K134913 | PW-V-07-K137101 | PW-V-07-K137261 |
| PW-V-07-K134914 | PW-V-07-K137102 | PW-V-07-K137275 |
| PW-V-07-K134915 | PW-V-07-K137103 | PW-V-07-K137276 |
| PW-V-07-K134916 | PW-V-07-K137105 | PW-V-07-K137277 |
| PW-V-07-K136271 | PW-V-07-K137106 | PW-V-07-K137278 |
| PW-V-07-K136272 | PW-V-07-K137108 | PW-V-07-K137279 |
| PW-V-07-K136273 | PW-V-07-K137109 | PW-V-07-K137280 |
| PW-V-07-K136274 | PW-V-07-K137110 | PW-V-07-K137281 |
| PW-V-07-K136275 | PW-V-07-K137111 | PW-V-07-K137288 |
| PW-V-07-K136660 | PW-V-07-K137112 | PW-V-07-K137289 |
| PW-V-07-K136661 | PW-V-07-K137115 | PW-V-07-K137290 |
| PW-V-07-K136786 | PW-V-07-K137116 | PW-V-07-K137291 |
| PW-V-07-K136787 | PW-V-07-K137117 | PW-V-07-K137292 |
| PW-V-07-K136982 | PW-V-07-K137184 | PW-V-07-K137293 |
| PW-V-07-K137046 | PW-V-07-K137185 | PW-V-07-K137294 |
| PW-V-07-K137047 | PW-V-07-K137186 | PW-V-07-K137296 |
| PW-V-07-K137048 | PW-V-07-K137187 | PW-V-07-K137297 |
| PW-V-07-K137065 | PW-V-07-K137188 | PW-V-07-K137298 |
| PW-V-07-K137066 | PW-V-07-K137189 | PW-V-07-K137299 |
| PW-V-07-K137067 | PW-V-07-K137190 | PW-V-07-K137300 |
| PW-V-07-K137068 | PW-V-07-K137191 | PW-V-07-K137301 |
| PW-V-07-K137069 | PW-V-07-K137192 | PW-V-07-K137302 |
| PW-V-07-K137070 | PW-V-07-K137194 | PW-V-07-K137303 |
| PW-V-07-K137084 | PW-V-07-K137195 | PW-V-07-K137306 |
| PW-V-07-K137085 | PW-V-07-K137196 | PW-V-07-K137309 |
| PW-V-07-K137086 | PW-V-07-K137197 | PW-V-07-K137311 |
| PW-V-07-K137087 | PW-V-07-K137198 | PW-V-07-K137312 |
| PW-V-07-K137088 | PW-V-07-K137199 | PW-V-07-K137466 |
| PW-V-07-K137089 | PW-V-07-K137200 | PW-V-07-K137467 |
| PW-V-07-K137090 | PW-V-07-K137201 | PW-V-07-K137468 |
| PW-V-07-K137091 | PW-V-07-K137202 | PW-V-07-K137469 |
| PW-V-07-K137092 | PW-V-07-K137203 | PW-V-07-K137470 |

Case Nos. PW-V-07-K136271, *et al.*

| | | |
|---|---|---|
| PW-V-07-K137471 | PW-V-07-K137585 | PW-V-07-K138747 |
| PW-V-07-K137472 | PW-V-07-K137587 | PW-V-07-K138748 |
| PW-V-07-K137473 | PW-V-07-K137634 | PW-V-07-K138752 |
| PW-V-07-K137474 | PW-V-07-K137635 | PW-V-07-K138753 |
| PW-V-07-K137475 | PW-V-07-K137636 | PW-V-07-K138754 |
| PW-V-07-K137476 | PW-V-07-K137637 | PW-V-07-K138755 |
| PW-V-07-K137477 | PW-V-07-K137638 | PW-V-07-K138756 |
| PW-V-07-K137478 | PW-V-07-K137639 | PW-V-07-K138757 |
| PW-V-07-K137479 | PW-V-07-K137647 | PW-V-07-K138758 |
| PW-V-07-K137480 | PW-V-07-K137648 | PW-V-07-K138759 |
| PW-V-07-K137481 | PW-V-07-K137650 | PW-V-07-K139007 |
| PW-V-07-K137482 | PW-V-07-K137652 | PW-V-07-K139008 |
| PW-V-07-K137483 | PW-V-07-K137678 | PW-V-07-K139009 |
| PW-V-07-K137484 | PW-V-07-K137679 | PW-V-07-K139010 |
| PW-V-07-K137485 | PW-V-07-K137680 | PW-V-07-K139011 |
| PW-V-07-K137486 | PW-V-07-K137681 | PW-V-07-K139012 |
| PW-V-07-K137487 | PW-V-07-K137682 | PW-V-07-K139016 |
| PW-V-07-K137488 | PW-V-07-K137701 | PW-V-07-K139017 |
| PW-V-07-K137489 | PW-V-07-K137892 | PW-V-07-K139018 |
| PW-V-07-K137490 | PW-V-07-K138233 | PW-V-07-K139019 |
| PW-V-07-K137491 | PW-V-07-K138235 | PW-V-07-K139020 |
| PW-V-07-K137492 | PW-V-07-K138236 | PW-V-07-K139021 |
| PW-V-07-K137493 | PW-V-07-K138292 | PW-V-07-K139023 |
| PW-V-07-K137494 | PW-V-07-K138364 | PW-V-07-K139024 |
| PW-V-07-K137495 | PW-V-07-K138365 | PW-V-07-K139025 |
| PW-V-07-K137496 | PW-V-07-K138366 | PW-V-07-K139026 |
| PW-V-07-K137497 | PW-V-07-K138369 | PW-V-07-K139027 |
| PW-V-07-K137498 | PW-V-07-K138370 | PW-V-07-K139028 |
| PW-V-07-K137499 | PW-V-07-K138371 | PW-V-07-K139029 |
| PW-V-07-K137500 | PW-V-07-K138372 | PW-V-07-K139030 |
| PW-V-07-K137501 | PW-V-07-K138374 | PW-V-07-K139031 |
| PW-V-07-K137502 | PW-V-07-K138375 | PW-V-07-K139032 |
| PW-V-07-K137503 | PW-V-07-K138377 | PW-V-07-K139033 |
| PW-V-07-K137504 | PW-V-07-K138379 | PW-V-07-K139034 |
| PW-V-07-K137505 | PW-V-07-K138380 | PW-V-07-K139035 |
| PW-V-07-K137573 | PW-V-07-K138381 | |
| PW-V-07-K137574 | PW-V-07-K138745 | |
| PW-V-07-K137575 | PW-V-07-K138746 | |
| PW-V-07-K137584 | | |

Case Nos. PW-V-07-K136271, *et al.*

## Certificate of Service:

**By U.S. Mail (Postage Paid):**

Mara Verheyden-Hilliard, Esq.
Carl Messineo, Esq.
Partnership for Civil Justice, Inc.
2401 Pennsylvania Avenue, N.W.
Suite 320
Washington, DC 20037

**By Inter-Agency Mail:**

Christine V. Davis, General Counsel
Department of Public Works
2000 14th Street, NW, 6th Floor
Washington, DC 20009

Reginald May
Department of Public Works
3220 Pennsylvania Avenue, SE
Washington, DC 20020

I hereby certify that on ⟨*Dec 7*⟩
2007 this document was caused to be served
upon the parties named on this page at the
addresses listed and by the means stated.

*[signature]*

**Clerk / Deputy Clerk**

5

District's Exhibit No. 3

DISTRICT OF COLUMBIA REGISTER                    MAY 2 1 2004

## GOVERNMENT OF THE DISTRICT OF COLUMBIA

### BOARD OF APPEALS AND REVIEW

| | | |
|---|---|---|
| International A.N.S.W.E.R. | ) | BAR Docket No: 02-5859-LC |
|     Appellant | ) | |
| | ) | Notice of Infraction Nos. 328965-0, |
|     vs. | ) | 328966-1 and 328967-2 |
| | ) | |
| D. C. Department of Public Works | ) | |
|     Appellee | ) | |

### DECISION AND ORDER

This appeal challenges the constitutionality of District of Columbia regulation 24 DCMR § 108.1 *et seq.*, a regulation promulgated to implement the District's littering laws by preventing the indiscriminate posting of signs and posters on public property. Appellant International A.N.S.W.E.R. (IA) also alleges the decision of the D. C. Department of Public Works (DPW) dated June 10, 2002, holding it liable for a violation of this regulation, is unsupported by substantial evidence and is contrary to law.

Some facts are undisputed. On March 18, 2002, between 11 a.m. and 12 noon, DPW Inspector Barry Carey, Sanitation Enforcement Branch, visited two locations where three signs had been posted on lampposts. Each sign advertised an 11 a.m. rally on April 20 at the White House and identified a web site and phone number (the former was www.InternationalAnswer.org; the latter was 202-543-2777). Each sign indicated the rally was for the purpose of gaining support for certain political objectives, namely, "U.S. out of Afghanistan," "No to racial and religious profiling," and "Money for Education NOT War." The signs, which are in evidence, did not indicate the date they were affixed.

Inspector Carey had been directed to these locations - 2423 Minnesota Avenue, S.E. and 2341 Pennsylvania Avenue, S.E. - by the Clean City Coordinator and ANC representative for this Southeast area. He took photographs of the signs and then returned to his office to research how to contact "International Answer" and to determine whether the signs had been posted illegally, i.e., not in compliance with 24 DCMR § 108.1 *et seq.* After concluding his research, Inspector Carey issued the three infractions referenced above. Inspector Carey ordered the signs removed within 72 hours. A fine of $35.00 was listed for each offense. The infraction notices were served by certified mail.

The regulatory provisions pertinent to this appeal are:

        24 DCMR § 108.1. No person shall affix a sign, advertisement, or poster to any public lamppost or appurtenances of a lamppost, except as provided in accordance with this section.

        24 DCMR § 108.4. Any sign, advertisement, or poster that does not relate to the

Notices of Infraction were invalid because they only cited 24 DCMR § 108.1 and did not refer to any sub-sections, such as 4, 5, 7 and 11, as rules that had to be followed (p.26).

That same day, June 10, 2002, Examiner Washington issued a written decision holding IA liable for the three infractions and assessed a $35.00 fine for each. Hearing Examiner Washington reviewed the record and concluded: "Respondent had reasonable knowledge that some of the volunteers would post the signs in the public space and should have taken the necessary steps to ensure that copies of the signs were filed with the appropriate office." She determined the penalties should be assessed at $35.00 per violation. An appeal was filed on June 25, 2002.

## SUFFICIENCY OF THE EVIDENCE

Appellant was found liable for violating 24 DCMR § 108.1. It is clear from the facts in the record that appellant violated 24 DCMR § 108.1, 4, 7 and 11. There was no evidence to support a violation of 24 DCMR § 108.5, i.e., that the signs in evidence were in place longer than sixty (60) days. To sustain these findings, there must be evidence in the record that IA was responsible for producing and distributing the signs, that the signs did not contain the date they were affixed and that IA had a legal obligation to comply with subparagraph 11. We find there is substantial evidence in the record as required by 1 DCMR § 510.14 (e) of our regulations and affirm the decision.

It is obvious from the testimony of Ms. Sloane, the statements of counsel and the record as a whole, that the signs in evidence were produced by IA, were provided to unidentified persons and were intended for public display. IA cannot escape responsibility for the illegal posting of signs by stating they were placed by unidentified persons when it admits those persons received the signs from IA for that purpose. Whether the signs in evidence were posted by IA staff or by volunteers, those who placed the signs did so with the implied authority of IA. "Implied authority is actual authority inferred from the circumstances, such as the relationship between the parties and conduct of the principal toward the agent manifesting the principal's consent to have the agent act for him." Lewis v. Washington Metropolitan Transit Authority, 463 A.2d 666, 669 (D.C. 1983). The record is sufficient to hold IA responsible for exhibiting the signs in violation of 24 DCMR § 108.1 et seq. IA's denial of responsibility to file copies of the signs with the Mayor's agent based on its not knowing who posted the signs is disingenuous.

We turn next to IA's claim that the infraction notices were defective because the respondent was insufficiently informed of the content of the regulation. It is the responsibility of a recipient of a violation notice to make reasonable inquiries of the substance of the legal obligation entailed. A violation notice is sufficient if it provides reasonable notice of the scope of the offense. Russell v. District of Columbia Board of Zoning Adjustment, App D.C., 402 A.2d 1231 (1979); Revithes v. District of Columbia Rental Housing Commission, App. D.C., 536 A.2d 1007 (1987). We believe the language of 24 DCMR § 108.1 - "except as provided in accordance with this section" - provides reasonable notice that the remaining portions of the regulation must be examined. Appellant, represented by counsel, knew or should have known of its obligations to satisfy the law's requirements.

The facts are sufficiently detailed so that the basic underlying reasons for the conclusions may be

inferred.  Daro Realty, Inc. v. District of Columbia Zoning Commission, 581 A.2d 295 (1990).
There is a presumption of correctness of an agency's decision, and the burden of demonstrating
error is upon the party appealing therefrom.  Cooper v. Department of Employment Services,
588 A. 2d 1172, 1174 (D.C. 1991).  The Board's task is limited to determining whether the
findings and conclusions in Hearing Examiner Washington's decision are supported by
substantial evidence and are in accordance with the law.  King v. Department of Employment
Services, 560 A. 2d 1067 (D.C. 1989).  We find that IA has not met its burden of proof.

## CONSTITUTIONAL CHALLENGE

The Board of Appeals and Review is authorized to consider issues of constitutionality by 1
DCMR § 510.14 (b).  We may not, however, refuse to enforce any statute, rule or regulation of
the United States or of the District of Columbia on the ground that it is repugnant to the
Constitution of the United States, 1 DCMR § 512.9,  Archer v. District of Columbia Department
of Human Resources, 375 A.2d 523 (1977).

On August 14, 2003, DPW filed a Motion to Dismiss the portion of the appeal containing the
constitutional challenge.  Appellant filed a lengthy opposition.  We conclude this issue in the
case should be left for consideration by the District of Columbia Court of Appeals if appellant so
choose to file an appeal there.  The record in this case to date is insufficient for the Board to
undertake a constitutional review.

THEREFORE, this _8th_ day of March 2004, the appeal is DENIED.

_David H. Marlin_
David H. Marlin, Board Chair
Mike Meier, Legal Member

District's Exhibit No. 4

# District of Columbia
# Court of Appeals



No. 04-AA-336

INTERNATIONAL A.N.S.W.E.R.,

                              Petitioner,

    v.                                               LC5859-02

DISTRICT OF COLUMBIA
DEPARTMENT OF PUBLIC WORKS,

                              Respondent.

BEFORE:    Washington, Associate Judge, and Pryor and Newman, Senior Judges.

## ORDER

On consideration of the petition for review and respondent's motion to dismiss the petition for review due to lack of jurisdiction, and there appearing to be no response thereto, it is

ORDERED that respondent's motion to dismiss for lack of jurisdiction is granted and the petition for review is hereby dismissed for lack of jurisdiction as untimely filed. *See* D.C. Code § 8-809 (b) (2001).

PER CURIAM

Copies to:

Carl Messineo, Esquire
1901 Pennsylvania Avenue, N.W.
Suite 607
Washington, D.C. 20006

Edward E. Schwab
Deputy Attorney General - D.C.

jb

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ACT NOW TO STOP WAR AND END             )
RACISM COALITION, *et al.*,             )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )        Civil Action No.07-1495 (HHK)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
            Defendant.                  )
_____)

ORDER

Upon consideration of the Defendant's Motion To Dismiss, the Memorandum of Points and Authorities in Support thereof and any opposition thereto, the entire record herein, and it appearing that the relief should be granted, it is hereby:

ORDERED, that the Defendant's Motion To Dismiss be, and hereby is, GRANTED, and it is

FURTHER ORDERED, that the Complaint is hereby DISMISSED with prejudice.

SO ORDERED.

    SO ORDERED.


DATE: _____          _____
                                    HENRY H. KENNEDY
                                    United States District Judge