UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ACT NOW TO STOP WAR AND END      )
RACISM COALITION, *et al.*,              )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 )        Civil Action No.07-1495 (HHK)
                                         )
DISTRICT OF COLUMBIA,                    )
                                         )
            Defendant.                   )
_____)

## DEFENDANT'S REPLY

Pursuant to LCvR 7(d), defendant the District of Columbia hereby briefly replies to Plaintiffs' Opposition to Defendant's Motion to Dismiss.

"The first amendment was never intended to protect the few while providing them with a sacrosanct sword and shield with which they could injure the many." *Brandywine-Main Line Radio, Inc. v. FCC*, 473 F.2d 16, 62 (D.C. Cir. 1972), *cert. denied*, 412 U.S. 922 (1973).

Plaintiffs' opposition is rife with irrelevant political discussion and conclusory assertions that they have been persecuted for their views, but plaintiffs have not cited to a single controlling case (and the District is aware of none) invalidating postering regulations like the District's on the grounds cited by plaintiffs.

*1. The Court Should Dismiss the Complaint Pursuant to* Younger.

Plaintiffs fail in their attempt to distinguish *JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004), relying primarily on overheated and unhelpful rhetoric. That case, which fully controls here, mandates dismissal of the instant claims.

Plaintiffs argue that abstention is not appropriate because they are not seeking to enjoin the pending administrative enforcement action being taken against them locally, but bring a "constitutional facial challenge" to the District's postering regulations, which they claim are vague, overbroad, and impermissibly "content-based." P.Opp. at 3, 5. The First Amended Complaint contains only one count, and seeks to enjoin *any* enforcement of these District regulations "as applied to political speech . . . ." First Am. Compl. at 12.

But the *JMM* plaintiff sought *exactly the same* relief; it sought to enjoin the pending local enforcement action against it, but it also sought—just as plaintiffs do here—an injunction against *all* enforcement of what it alleged were "unconstitutional content-based restrictions [that] are vague and overbroad." *JMM*, 378 F.3d at 1120.

*JMM* discussed at length the policy against "federal interference with state court proceedings," JMM, at 1121, but plaintiffs' instant relief, if granted, would be a far greater "interference" with local proceedings than enjoining any specific enforcement action, against plaintiffs or anyone else.[1]

Plaintiffs also disingenuously claim that "there is no reason to anticipate" that ANSWER Coalition could raise its constitutional claims in the administrative action and, worse, that the administrative law judge "will not allow or entertain constitutional challenges" to the regulations. P.Opp. at 6. These protests are utterly meaningless, however, in light of *JMM*, which

---

[1]     *See id.* at 1123:

Federal court interference with District enforcement proceedings may prevent the District from effectuating its substantive policies and disrupt its efforts to protect interests it regards as important. It will certainly result in duplicative legal proceedings and may be interpreted to reflect negatively on the District's ability to enforce constitutional principles. But just as with a state, there is no reason to presume that the courts of the District cannot be trusted to adequately protect federal constitutional rights.

could not have been any clearer: "Whether or not the defendant can also raise its constitutional defenses at the administrative level, 'it is sufficient under [*Younger v. Harris*, 401 U.S. 37 (1971)] that constitutional claims may be raised in state-court judicial review of the administrative proceeding.'" *JMM*, 378 F.3d at 1121 (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc*., 477 U.S. 619, 629 (1986)).

Thus, even if ANSWER Coalition is somehow denied the ability to even mention its constitutional concerns at the administrative level, abstention is *still* appropriate, due to the ability to raise those issues in subsequent court appeals of the administrative proceedings. *Id.*

Plaintiffs also seize on language in the single, narrow exception to the application of the doctrine of equitable restraint in a failed attempt to shoehorn their allegations into a successful argument.

The Circuit in *JMM* held that dismissal pursuant to *Younger* was appropriate "even where a defendant levels a facial First Amendment challenge against a regulation and contends that its existence has a chilling effect on his free speech." *Id.* at 1122 n.11. To avoid the application of equitable restraint, a party must demonstrate "extraordinary circumstances," such as where the law to be enforced was "flagrantly and patently" unconstitutional. *JMM*, 378 F.3d at 1122 (citing *Trainor v. Hernandez*, 431 U.S. 434, 442–43 (1977)).

Plaintiffs have not made such a dramatic showing, other than repeatedly invoking the mantra of "flagrantly and patently unconstitutional," and primarily citing their own complaint. While plaintiffs may subjectively believe that the District has taken action against the ANSWER Coalition because of that organization's views, there are no objective indications of such a motive. *Id.* (a party may avoid *Younger* equitable restraint if it can show that government action was taken "in bad faith or for the purpose of harassing" it).

The regulations in dispute here have been in effect, in substantially similar form, for almost 30 years. *See* D.C. Law 3-50, the "Street Sign Regulation Amendment Act of 1979," 26 D.C. Register 2733 (Dec. 21, 1979). It strains credulity to suggest that those same regulations now "flagrantly and patently" violate the First Amendment on their face, where plaintiffs can point to no previous challenges to those regulations. Dozens of jurisdictions across the country have similar regulations, and plaintiffs have not cited *any* controlling case invalidating like regulations.

Additionally, it is unclear to what plaintiffs refer when they claim that the "registration" requirements of the postering regulations are waived for "political campaign literature," P.Opp. at 4, but they are simply wrong.[2] In fact, political campaign literature has long been constitutionally required to contain *mandatory* language not required of other posters.[3]

> All . . . printed matter with reference to or intended for the support or defeat of a candidate or group of candidates for nomination or election to any public office, or for the support or defeat of any initiative, referendum, or recall measure, shall be identified by the words "paid for by" followed by the name and address of the payer or the committee or other person and its treasurer on whose behalf the material appears.

D.C. Official Code § 1-1102.10.

*2. Plaintiffs Lack Article III Standing.*

Plaintiffs incorrectly imply that an exception to the general rules for prudential standing allows them to bring their facial constitutional challenge because of the potential chill on

---

[2]    The registration requirements of which plaintiffs complain do not, on their face, contain an exemption for *any* particular type of poster. *See* 24 DCMR § 108.11.

[3]    Plaintiffs also incorrectly claim that political campaign literature may be posted for an indefinite amount of time, P.Opp. at 4, but 24 DCMR § 108.6 states that those materials "shall be removed no later than thirty (30) days following the general election."

expressive activity presented by the allegedly "overbroad" regulations. P.Opp. at 13. But even if that exception applied here, plaintiffs fail to meet the concurrent requirements of Article III standing.

Despite the clear requirement of case law that a plaintiff support its standing by alleging a "specific present objective harm or a threat of specific future harm," *Laird v. Tatum*, 408 U.S. 1, 14 (1972), plaintiffs fail to provide any "specificity" at all, either in their allegations or their self-serving declarations.[4] Plaintiffs' asserted injuries lack the details necessary to support standing; there are simply no specifics, just vague assertions of a "chill."

Plaintiffs have failed to show the "concrete and particularized injuries" necessary to support standing. "Litigants are . . . not entitled to an adjudication of every question they perceive after reading through the text of legislation." *National Family Planning & Reproductive Health Ass'n v. Gonzalez*, 468 F.3d 826, 829 (D.C. Cir. 2006) (quoting *American Library Ass'n v. Barr*, 956 F.2d 1178, 1197 (D.C. Cir. 1992)).[5] Plaintiffs argue vehemently that the regulations

---

[4]     Although the documents are captioned "Affidavit," they are more properly considered declarations, as they have not been notarized. *See* 28 U.S.C. § 1746.

[5]     In *Barr*, several organizations challenged the constitutionality of provisions of the federal Child Protection and Obscenity Act, alleging that they or their members' First Amendment rights would be chilled because the continued existence of the law "will cause them to engage in self-censorship." *Id.*, 956 F.2d at 1190. The Circuit rejected that argument, noting that "plaintiffs have not identified or described a single film, photograph or other item they or their members have suppressed as a result of [the law]." *Id.* at 1191.

So too here. The instant plaintiffs have not identified or described *any* current or imminent plans to mount posters for any specific future campaigns, marches, protests, rallies, or other events; they make only conclusory assertions concerning a self-imposed general restraint, which are insufficient as a matter of law to support standing. *See* Becker Declaration ¶ 3 (ANSWER Coalition "is currently refraining from posting"); Bray Declaration ¶ (MASFF "must currently refrain from posting"). "We are left then with nothing more than plaintiffs' conclusory assertions, in their complaint and affidavits, that in view of the uncertainty about [the law], they are 'chilled'" by it. *Barr*, 956 F.2d at 1192–93.

"objectively chill" the exercise of constitutional rights, but provide no support for that proposition except for repeated, conclusory assertions.

Plaintiffs claim that their "constitutionally protected freedoms are currently injured." P.Opp. at 12 (citing *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976)). But again, they only fall back on their self-imposed restraint not to engage generally in postering, without providing any of the specifics required by the courts to confer standing.

"[W]here it is not clear that a particular [government action] will have any actual adverse effect on protected First Amendment liberties, the moving party must demonstrate some likelihood of a chilling effect on their rights." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006). Merely asserting a "chilling effect" on the exercise of First Amendment rights is insufficient, alone, to demonstrate constitutional injury. *Laird*, 408 U.S. at 13–14 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm . . . .").

Put simply, "the harm of a 'chilling effect,' without more, does not support standing." *Fraternal Order of Police v. Rubin*, 26 F.Supp.2d 133, 141 (D.D.C. 1998) (citing *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984)). *See also DKT Memorial Fund, Ltd. v. USAID*, 887 F.2d 275, 298–99 (D.C. Cir. 1989) (rejecting standing where plaintiffs "still com[e] before us with a bare allegation of 'subjective chill'") ("Plaintiffs were on quite adequate notice long ago of the need for such specific present harm and have demonstrated none.") (citing *Laird*); *Hatfill v. Ashcroft*, 404 F.Supp.2d 104, 118–19 (D.D.C. 2005) (plaintiff "having failed to show that his First Amendment rights were *actually chilled*, has not stated a claim for which relief can be granted . . . .") (emphasis in original). *Cf. National Family Planning & Reproductive Health Ass'n v. Gonzalez*, 468 F.3d 826, 829 (D.C. Cir. 2006) (finding that plaintiff

lacked Art. III standing to assert First Amendment claim, where alleged vagueness of statute leaves plaintiff "uncertain" as to how to comply).

Plaintiffs have not shown the separate injury-in-fact necessary to support standing here. A "[c]hilling effect is cited as the *reason* why the governmental imposition is invalid rather than as the *harm* which entitles plaintiff to challenge it." *Barr*, 956 F.2d at 1193 (quoting *United Presbyterian*, 738 F.2d at 1378)).

MASFF's claim is even more precarious. Its standing depends on the likelihood of enforcement of the disputed regulations against them in the future, "and not on how much the prospect of enforcement worries them." *Barr*, 956 F.2d at 1193; *id.* at 1194 (to establish standing, "a litigant must demonstrate a credible threat of prosecution under a statute that appears to render the litigant's arguably protected speech illegal.) (citing *Renne v. Geary*, 501 U.S. 312 (1991)); *Skaggs v. Carle*, 110 F.3d 831, 837 (D.C. Cir. 1997) (same).

MASFF has simply failed to make such a showing here.[6]

"[W]e are not persuaded that every plaintiff who alleges a First Amendment chilling effect and shivers in court has thereby established a case or controversy." *Metropolitan Airports*, 959 F.2d at 306 (quoting *National Student Ass'n, Inc., v. Hershey*, 412 F.2d 1103, 1113–14 (D.C. Cir. 1969)).

---

[6]    Plaintiffs fail to distinguish *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), and expend considerable effort knocking down a straw man of their own construction. *Parker* (like *Seegars* and *Navegar* before it) stands for the proposition that a general threat of prosecution (criminal or civil) is insufficient to support Article III standing, even in a First Amendment challenge. *Id.* at 374. Rather, said the court, to show standing, a plaintiff must allege "an actual and well-founded fear that the law will be enforced against them . . . ." *Id.* at 375 (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).

*3. Plaintiffs Lack Prudential Standing.*

Although prudential standing principles may be relaxed when First Amendment violations are asserted, they are not—as plaintiffs imply—entirely discarded. As the Supreme Court said in *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973), applying the overbreadth doctrine is "strong medicine" which should be "employed by the Court sparingly and only as a last resort."[7]

Indeed, as our Circuit has noted, "the overbreadth doctrine may not be invoked to strike down any provision that might reach protected speech in some imaginable application. To invalidate a statute on its face, the overbreadth 'must not only be real, but *substantial* as well, judged in relation to the statute's plainly legitimate sweep.'" *Metropolitan Wash. Airports Auth. Prof'l Fire Fighters Ass'n Local 3217, Int'l Ass'n of Fire Fighters, AFL-CIO-CLC v. United States*, 959 F.2d 297, 305 (D.C. Cir. 1992) (emphasis in original) (quoting *Broadrick*)). Put another way, "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications." *Metropolitan Airports*, 959 F.2d at 305 (quoting *New York v. Ferber*, 458 U.S. 747, 771 (1982)).

---

[7]     *See also Sabri v. United States*, 541 U.S. 600 (2004):

[F]acial challenges are best when infrequent. [F]acial adjudication carries too much promise of "premature interpretatio[n] of statutes" on the basis of factually barebones records. [N]ot only do [such challenges] invite judgments on fact-poor records, but they entail a further departure from the norms of adjudication in federal courts[.] Accordingly, we have recognized the validity of facial attacks alleging overbreadth (though not necessarily using that term) in relatively few settings, and, generally, on the strength of specific reasons weighty enough to overcome our well-founded reticence.

*Id*. at 609–610 (citations omitted).

Plaintiffs have not made this showing of substantiality, that there is a "likelihood that the statute's very existence will inhibit free expression." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984). Plaintiffs have presented no objective evidence of any chill aside from their own conclusory assertions. "[T]here must be a realistic danger that the statute itself will *significantly compromise* recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id*. at 801 (emphasis added) (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).

*4.* Res Judicata *Prevents ANSWER Coalition From Proceeding.*

Plaintiffs baldly claim that "[t]he doctrine of claim preclusion or *res judicata* does not apply to constitutional issues or issues of public import." Plaintiffs are wrong as a matter of law, as their own citations—and *JMM* itself—make clear.[8]

Plaintiffs' claim is essentially a "state law claim in federal garb." *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000). Plaintiffs, having inflated their local regulatory dispute over littering tickets into a constitutional claim, then attempt to hide behind it to avoid the normal operation of *res judicata*.

It is not sufficient to avoid preclusion, as plaintiffs imply, to simply utter the magic word "Constitution." If that were the case, *every* litigant seeking to avoid preclusion would include constitutional claims in *every* pleading to avoid the results of previous litigation.

---

[8]     Indeed, the majority of plaintiffs' citations are decades-old and from other jurisdictions.

As shown above, the plaintiff in *JMM* raised the *same* "important questions of constitutional law" that the instant plaintiffs advance, but was nonetheless precluded. *JMM*, 378 F.3d at 1120.

Plaintiffs have not advanced the *compelling* reasons necessary to avoid the normal operation of *res judicata* principles. *See Apotex, Inc. v. FDA*, 393 F.3d 210, 219 (D.C. Cir. 2004) (exceptions to operation of *res judicata* apply "only in *very limited* circumstances, *e.g.*, in cases implicating *significant* questions of constitutional law where there has been a *change* in controlling legal principles.") (emphasis added); *Hardison v. Alexander*, 655 F.2d 1281, 1288–89 (D.C. Cir. 1981) ("[o]n *rare* occasions the courts have been willing to override the bar of *res judicata* for reasons of *compelling* public policy.") (emphasis added).

Regardless of how strongly plaintiffs believe they have been wronged, merely asserting a First Amendment challenge to District regulations does not fulfill plaintiffs' burden. *Hardison*, 655 F.2d at 1288–89 ("[T]his case hardly involves anything like the paramount questions of constitutional law or exclusive jurisdiction that have been required in the past to overcome the normal application of *res judicata*."). Plaintiffs cannot show that these regulations are selectively enforced; the record at the administrative proceeding (as well as the public record) will show that the postering regulations are enforced evenhandedly against a wide range of entities that litter public space, including the campaigns of every prominent local political candidate. Only if there were any objective indication of the *opposite*, that certain viewpoints were systematically targeted for suppression, might plaintiffs then be able to avoid the ordinary operation of the doctrine of preclusion. Simply making strongly worded allegations is not enough.

"*Res judicata* . . . prevents the consideration not only of those issues which were litigated but also those which *might have been litigated* in the first action." *Woodward & Lothrop, Inc. v.*

*Schnabel*, 593 F.Supp. 1385, 1398 (D.D.C. 1984) (emphasis added). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (emphasis in original) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

That is exactly what occurred here—plaintiff ANSWER Coalition received a final judgment on the merits in *A.N.S.W.E.R. v. DPW*, D.C. Bd. of Appeals & Review Dkt. No. 02-5859-LC, 51 D.C. Reg. 5382 (May 21, 2004)), in which it challenged the *same* regulations it does here under the First Amendment. ANSWER Coalition then attempted to appeal that decision to the D.C. Court of Appeals, but its appeal was dismissed as "untimely," which, for *res judicata* purposes, is treated as a "judgment on the merits." *See Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)).

ANSWER Coalition cannot proceed here.  *Dynaquest Corp. v. USPS*, 242 F.3d 1070, 1076 n.5 (D.C. Cir. 2001) (final judgment in another court *precludes* parties from relitigating issues that were or could have been raised in that action, regardless of whether that action was administrative or judicial, and *res judicata* applies to questions of law as well as fact); *North v. Walsh*, 881 F.2d 1088, 1093 (D.C. Cir. 1989).

Plaintiffs concede (by entirely ignoring) the reach of *res judicata* to encompass issues that *were or could have been raised*. Even if the facts were different in ANSWER Coalition's instant administrative dispute, preclusion would *still* apply. *See Nat'l Post Office Mail Handlers v. American Postal Workers Union*, 907 F.2d 190, 192 (D.C. Cir. 1990) (even if the facts are different in a subsequent case, if the legal issues are the same, relitigation of those issues is precluded).

ANSWER Coalition argues that while it "sought" to present its constitutional defenses in the previous administrative proceeding, the hearing examiner "refused to entertain them . . . ." P.Opp. at 17. But as the District has already demonstrated, for purposes of the application of *res judicata*, such a claim is utterly immaterial. *See JMM*, 378 F.3d at 1121. Moreover, preclusion applies even as to erroneous decisions. *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984) (*citing Hardison*, 655 F.2d at 1288).

This Court should not excuse ANSWER Coalition's failure to preserve its constitutional arguments in the previous administrative proceeding; it had the opportunity to do so and failed. It is thus precluded from proceeding here under the ordinary application of *res judicata*.

DATE: April 4, 2008                    Respectfully submitted,

                                       PETER J. NICKLES
                                       Interim Attorney General for the District of Columbia

                                       GEORGE C. VALENTINE
                                       Deputy Attorney General, Civil Litigation Division

                                            /s/ Ellen A. Efros
                                       ELLEN A. EFROS, D.C. Bar No. 250746
                                       Chief, Equity Section I
                                       441 Fourth Street, N.W., 6th Floor South
                                       Washington, D.C. 20001
                                       Telephone: (202) 442-9886
                                       Facsimile: (202) 727-0431

                                            /s/ Andrew J. Saindon
                                       ANDREW J. SAINDON, D.C. Bar No. 456987
                                       Assistant Attorney General
                                       Equity I Section
                                       441 Fourth Street, N.W., 6th Floor South
                                       Washington, D.C. 20001
                                       Telephone: (202) 724-6643
                                       Facsimile: (202) 727-0431
                                       andy.saindon@dc.gov