**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ACT NOW TO STOP WAR AND END RACISM COALITION, *et al.,* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 07-cv-1495 (RCL) |
| DISTRICT OF COLUMBIA | ) ) ) | |
| Defendant. | ) ) ) ) | |

**MEMORANDUM OPINION**

Pending before the Court is plaintiff Muslim American Freedom Foundation's ("MASF")

Motion for a Protective Order to Protect Plaintiff from Responding to Unauthorized Discovery

Demands Propounded by the District of Columbia in Disobedience of the Discovery Order.  Apr.

11, 2012, ECF No. 49.  Upon consideration of the motion, the opposition and reply thereto, the

record herein, and the applicable law, the Court will grant plaintiff's motion.

## I.     INTRODUCTION

This case concerns the constitutional right to hang political posters on lampposts in the

nation's capital.  In their First Amended Complaint, Act Now to Stop War and End Racism

Coalition ("ANSWER") and Muslim American Society Freedom Foundation ("MASF") alleged

that certain District of Columbia regulations violated the First Amendment, the Due Process

Clause and 42 U.S.C. § 1983.  First Am. Compl. ¶ 48, Dec. 18, 2007, ECF No. 3.  In 2008, the

Court granted defendant's Motion to Dismiss on standing and abstention grounds.  Mem. Op. 1,

Aug. 11, 2008, ECF No. 14.  The United States Court of Appeals for the District of Columbia Circuit reversed and remanded the case for further consideration.  Upon reconsideration, this Court granted in part and denied in part defendant's Motion to Dismiss.  *Act Now To Stop War and End Racism Coalition v. District of Columbia* (*ANSWER III*), 798 F. Supp. 2d 134, 155 (D.D.C. 2011).[1]  The Court dismissed all claims except for MASF's First Amendment facial challenge to the District's postering and signage regulations, 24 D.C.M.R. §§ 108.5-18.6.  *Id.*  The ruling left MASF as the only remaining plaintiff, and MASF's "vagueness" and "event/non-event" challenges as the only issues to be resolved at trial.  *Id.* at 150–51.

The case proceeded to discovery and the parties submitted their Joint Report to the Court pursuant to Local Rule (LCvR) 16.3 on October 21, 2011.  Joint Report 1, ECF No. 45.  The parties agreed that the outstanding issues could be resolved by dispositive motion.  *Id.* 5. However, plaintiff sought discovery to ascertain whether the District gave any information or instructions to its staff, or possessed any information that would shed light on either the definition of "event" or the enforcement of the regulation in question.  *Id.* 6.  The District objected both to initial disclosures and discovery, arguing that discovery was "unnecessary" because the remaining issues presented "a purely legal question."  *Id.* 4, 6.  The District did not request any discovery, but merely "reserve[d] the right to object to any and all discovery requests . . . ."  *Id.* 6–7.  The Court accepted plaintiff's proposed quantum of discovery and ordered discovery to close on May 18, 2012.  Sched. Order 1, Nov. 17, 2011, ECF No. 48.  The

---

[1] This Opinion contains a more extensive recitation of the underlying facts and procedural history of this case.

Scheduling Order specifically allowed plaintiff to initiate limited discovery; no discovery was asked for by, or awarded to, the District. *Id.*[2]

## II.   BACKGROUND

### A.   Defendant's Actions and Plaintiff's Response

In clear disregard of this Court's Order and its own statements about the necessity of discovery, the District propounded eleven interrogatories and a related request for document production. Def.'s Interrog. 6–8, Ex. 1 to Pl.'s Mot. Protect. Order, Mar. 9, 2012, ECF No. 49-2. In further demonstration of defendant's complete ignorance as to the procedural setting of this case, the District propounded four interrogatories (numbers seven thru ten) to ANSWER—who the Court had dismissed from the action—and to claims that the Court likewise dismissed. *Id.* In an effort to prevent "unnecessary consumption of litigation and judicial resources," plaintiff requested that defendant identify the authority under which it propounded the interrogatories. Pl.'s Ltr. 1, Ex. 2 to Pl.'s Mot. Protect. Order, Apr. 5, 2012, ECF No. 49-2. Anticipating that no such authority existed, plaintiff also requested that defendant withdraw its interrogatories, consent to a protective order and the payment of fees and costs incurred by plaintiff in responding to defendant's unauthorized discovery request. *Id.* 2.

Instead of admitting its mistake, the District decided to go all in. In its response letter, the District, as "a gesture of good faith and cooperation," withdrew interrogatories six through eleven, ignoring the fact that interrogatories seven through ten either were directed at a dismissed party or requested information about dismissed counts. Def.'s Ltr. 1, Ex. 3 to Pl.'s Mot. Protect.

---

[2] Although the District argued that discovery was inappropriate, its proposed scheduling order did request discovery be allowed for "each party." Def.'s Prop. Sched. Order 1, Oct. 21, 2011, ECF No. 45-1. However, the Court accepted plaintiff's proposed discovery order, which allowed only plaintiff to initiate discovery. Sched. Order 1, Nov. 17, 2011, ECF No. 48; Pl.'s Prop. Sched. Order 1, Oct. 21, 2011, ECF No. 45-2.

Order, Apr. 9, 2012, ECF No. 49-2.  The District then defended its interrogatories by claiming that the Court's Scheduling Order "did not impose any such [discovery] limits on the District, much less prohibit the District from propounding any discovery at all."  *Id.*  Defendant argued that it "would be extraordinary if the Court had meant to deny the District from taking any discovery, but did not indicate that fact in more explicit language."  *Id.*

Two days after receiving defendant's response, plaintiff filed the instant motion seeking an order protecting plaintiff from responding to defendant's interrogatories, forbidding defendant from propounding any additional discovery and ordering payment of plaintiff's reasonable expenses, including attorney's fees.  Pl.'s Prop. Order, Apr. 11, 2012, ECF No. 49-1.

### B.   Defendant's Opposition

Defendant asserts that the Court should reject plaintiff's Motion because plaintiff has failed to meet its burden for a protective order, provided little law or analysis to support its positions, that defendant's discovery requests were proper and not overly burdensome, and that the Court should not sanction defendant because its filing was "substantially justified."  Def.'s Opp'n, Apr. 26, 2012, ECF No. 50.

## III.   LEGAL STANDARD

Among other things, scheduling orders help prevent delays, reduce litigation costs, manage the Court's docket and generally maintain the speedy resolution of cases by managing and setting limits on the pretrial discovery process.  *See* F.R.C.P. 16(b); LCvR 16.4.  Both the Federal Rules and this District's Local Rules mandate scheduling orders.  *Id.*  Scheduling orders are "intended to serve as 'the unalterable road map (absent good cause) for the remainder of the case.'"  *Olgyay v. Soc. for Envtl. Graphic Design, Inc.,* 169 F.R.D. 219, 220 (D.D.C. 1996) (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States*

*District Court for the District of Columbia* at 39 (Aug. 1993)).  Scheduling orders are not based

on the *ex parte* whims of the Court; rather, they are issued only after the parties have conferred

and given the Court a "Discovery Plan" that includes the parties' views on the proposed subjects

and limitations of discovery.  F.R.C.P. 26(f); 16(b)(1)(A).  The parties must provide the Court

with a statement on the matters upon which the parties have reached agreement, "a description of

the positions of each party on any matters as to which they disagree," as well as a proposed

scheduling order.  LCvR 16.3(d).

 These procedures assure that a "scheduling order 'is not a frivolous piece of paper, idly

entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth*

*Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992) (quoting *Gestetner Corp. v. Case Equip.*

*Co.,* 108 F.R.D. 138, 141 (D. Me. 1985)).  Indeed, a party's "[d]isregard of the order would

undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation,

and reward the indolent and the cavalier." *Id.*  As such, Rule 16 of the Federal Rules makes

plain that a Court may modify a scheduling order "only for good cause with the judge's

consent."  F.R.C.P. 16(b)(4); *see also* LCvR 16.4 ("The court may modify the scheduling order

at any time upon a showing of good cause.").

 Rule 16(f) is unambiguous and it underlines the importance of scheduling orders by

granting the Court express authority, on motion or on its own, to sanction parties and attorneys

when they fail to comply with the limitations, deadlines, and timetables set out in such orders.

F.R.C.P. 16(f); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 88 (D.D.C. 2003).  When a

Court finds that a party has violated a scheduling order without just cause, it must order,

"[i]nstead of or in addition to any other sanction  . . . the party, its attorney, or both to pay the

reasonable expenses—including attorney's fees—incurred because of any noncompliance with

the rule . . . ."  *Id.*   The Court's power is both express, in the form of the Federal Rule, and implicit, flowing from the very nature of the Court as an institution.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Indeed, Courts have the inherent discretion "to fashion an appropriate sanction for conduct which abuses the judicial process."  *Id.* at 44–45.  It is perfectly within the Court's to assess attorney's fees as a sanction for the "'willful disobedience of a court order.'" *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)).

The trial court's role in managing discovery extends to the resolution of discovery disputes, including issuing protective orders when necessary.  F.R.C.P. 26(c).  Upon a showing of "good cause," the Court may issue such an order to prevent a "party or person from [the] annoyance, embarrassment, oppression, or undue burden or expense" of complying with a discovery request.  *Id.*  To show good cause, "the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements . . . ."  *Low v. Whitman*, 207 F.R.D. 9, 10–11 (D.D.C. 2002) (citing *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (citations omitted)).  In addition, "district courts assessing the existence of good cause must exercise their discretion in light of the relevant facts and circumstances of a particular case." *Tavoulareas v. Washington Post*, 111 F.R.D. 653, 661 (D.D.C. 1986) (citing *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 599 (1978)).

## IV.   DISCUSSION

The central issue is whether defendant was authorized to propound any discovery at all. The answer is clear:  No.  Given the history of this litigation, the District's position and arguments are as untenable as they are ridiculous.  Defendant asks this Court to enter an Orwellian world where all arguments are devoid of context, and all Court orders magically mean whatever the District wishes them to mean.  The Court rejects this invitation.

The District's Opposition is riddled with needlessly caustic remarks, contradictory statements and peripheral law, which together serve only to highlight its own disingenuous arguments.  It first asserts that the Court did not impose any limits on discovery for the District.  Def.'s Opp'n 2.[3]  The District, however, quickly backs away from this stunning assertion.  Almost immediately, defendant then "respectfully suggests," in a footnote, that the language of the final Order "leads to the reasonable conclusion" that the Court did not intend to prohibit the District from taking discovery.  *Id.* 2 n.2.  Backing still further away from its opening statement, in yet another footnote, the District "avers that its interpretation of the Scheduling Order, and the discovery it propounded thereunder, was substantially justified."  *Id.* 6 n.4.

Highlighting its own hypocrisy, in a section entitled "Argument," the District asserts—without any real "argument," just a conclusory sentence—that plaintiff failed to meet its burden for a protective order because plaintiff "relie[d] entirely on conclusory statements, with no specific facts or admissible evidence."  *Id.* 3.  This, in fact, is the definition of irony.[4]  Defendant further attempts to obfuscate its clear violation of the Scheduling Order by claiming that its interrogatories were justified by Rule 26, and by arguing that the contention interrogatories—which plaintiff believes are overly burdensome—are, in fact, permissible in this Circuit.  *Id.* 3–6.  Lastly, defendant argues that plaintiff is not entitled to attorneys' fees and costs, or sanctions, because their interrogatories were "substantially justified."  *Id.* 6 n.4 (citing F.R.C.P. 37(a)(5)).

---

[3] Defendant chides plaintiff for "having . . . [the law] exactly backwards," and for not citing a single case supporting the proposition that "no discovery may be taken unless specifically authorized." Def.'s Opp'n 2 (emphasis in original).  Defendant conveniently does not point the Court to where in its motion plaintiff makes such an assertion.  Indeed, plaintiff did not assert this broad proposition, but only that defendant was not authorized by this Court's Scheduling Order to propound discovery requests.  Pl.'s Mot. Protect. Order 1.  Moreover, defendant fails to cite a single case from any circuit where a party was allowed to propound discovery beyond what a court allowed in its scheduling order.

[4] *Contra* ALANIS MORISSETTE, *Ironic*, on JAGGED LITTLE PILL (Maverick Records 1995) (inexplicably defining irony as "rain on your wedding day").

Plaintiff's reliance on Rule 37 is inappropriate.  The issue is not whether the District's interrogatories should be suppressed under the rule, but rather whether they were ever authorized.  Defendant asserts that the "plain text of the Court's Order authorized the District to serve discovery here."  Def.'s Opp'n 7.  In light of the procedural history of this case and the language of the Scheduling Order, the District's contention is patently absurd.  The Court has reviewed its Scheduling Order and found that it contained *no express authorization* allowing the District to conduct discovery.[5]  Nevertheless, defendant also argues that it had implicit authority to propound discovery for two reasons:  First, the Court's July 2011 Opinion "contemplated" discovery for both sides; and second, while the District's Proposed Scheduling Order allowed "each party" to propound discovery, "the Court copied the language in plaintiff's proposed order because it disagreed with the extent of the limits on discovery urged by the District, not because it wanted to prohibit the District from taking any discovery at all."  *Id.* 2 & n.2.

A review of this Court's July 2011 Opinion does not support defendant's contention.  In response to a series of hypotheticals presented by the plaintiff, the Court merely said that defendant would "have an opportunity during discovery to provide greater clarity about the definition of 'event[,]' . . . the relation of event/non-event distinction in §§ 108.5–108.6 to the

---

[5] The Scheduling Order reads:

Upon consideration of the parties' Joint Report [45], Oct. 21, 2011, and the entire record herein, it is hereby

ORDERED that no discovery requests may be served in this matter before January 18, 2012; and it is further

ORDERED that a 120-day discovery period shall close on May 18, 2012; and it is further

ORDERED that plaintiff is authorized to propound not more than ten (10) interrogatories, ten (10) requests for production, fifteen (15) requests for admission, and take six (6) depositions,  which shall include within than number any depositions pursuant to Federal Rule of Civil Procedure 30(b)(6); and it is further

ORDERED that the parties shall  file dispositive motions according to the following schedule:
- Dispositive Motions: June 22, 2012
- Oppositions: July 13, 2012
- Replies: July 20, 2012

SO ORDERED.
Signed by Royce C. Lamberth, Chief Judge, on November 17, 2011.

anti-littering interest it assert[ed] . . . and to demonstrate that it has established the 'minimal guidelines to govern law enforcement' that the Constitution requires." *ANSWER III*, 798 F. Supp. 2d at 151, 155.  Because this information would only be in the hands of defendant, the District cannot read these statements as an expectation by the Court that the District would need to propound discovery.  Rather, taken in context, they mean that the District would have an opportunity to reveal evidence during discovery that would provide greater clarity about the contested regulation.

Further, the defendant's contention that plaintiff provided insufficient legal analysis to support its motion is meritless.  While the Court encourages thorough pleadings supported by abundant legal research and analysis, the present motion is so simple that the plaintiff did not need much legal analysis to meet its burden under Rule 16(f).  A Scheduling Orders serves as "unalterable road map (absent good cause) for the remainder of the case." *Olgyay*, 169 F.R.D. 219, 220 (D.D.C. 1996) (internal quotation marks and citation omitted).  Moreover, the Rule is clear:  Federal courts can sanction and require parties or their attorneys to pay costs stemming from a violation of a scheduling order.  F.R.C.P 16(f).  In addition to the express rule, it is a basic maxim that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 227 (1821).  Therefore, to meet its burden plaintiff need do no more than cite the Federal Rule and this Court's Scheduling Order, then provide evidence demonstrating that defendant violated the Court's Order.  It did just that.  *See generally* Pl.'s Mot. Protect. Order [49], Apr. 11, 2012.

Our legal system is built and maintained on a fragile foundation of trust: trust between clients and counselors, between counselors and Courts, between Courts and the public, and

between the public and public servants.  Pleadings like the District's Opposition, which present the Court with baseless arguments that fly in the face of reality and common sense, serve only to undermine that trust.  Defense counsel is reminded that attorneys appearing before the Court have an ethical duty to be candid with the tribunal, and not to knowingly make false statements of fact or law.  *See*, *e.g.*, D.C. Rules of Prof'l Conduct R. 3.3(a)(1); *see also Barnes v. Dist. of Columbia*, ___ F. Supp. 2d ___, 2012 WL 4466669, *26–*27 (D.D.C. Sept. 28, 2012) (Lamberth, C.J.) (imploring both parties to litigate case with more care); *D.L. v. Dist. of Columbia*, 274 F.R.D. 320, 328 (D.D.C. 2011) (Lamberth, C.J.) (sanctioning District for "openly, continuously, and repeatedly violating multiple Court orders, failing to adhere to or even acknowledge the existence of the Federal Rules' discovery framework, and committing a discovery abuse so extreme as to be literally unheard of in this Court.").  Defense counsel is also reminded that they owe a duty to the people of the District of Columbia to act prudently and honestly on their behalf.

Sadly, in this instance, defense counsel demonstrated neither prudence nor honesty.  To the extent that the Court entertains defense counsel's interpretation of the Scheduling Order, the Court can say this:  Defense counsel's reading of the Order was presumptuous at best.  The District could have easily resolved any confusion by moving the Court to clarify or amend its Order.  The District could have filed such a motion before or after propounding the interrogatories, or after plaintiff objected in writing.  Yet, defendant decided to pass on each of these opportunities.  The result was an unnecessary and ill-advised expenditure of taxpayer funds, which also cost the plaintiff time and money.  Now, defense counsel is responsible for consuming even more of the City's resources.  The Court determines that the District's discovery

requests were unauthorized and directly violate this Court's Scheduling Order.   Therefore, defendant is ordered to pay plaintiff's reasonable costs, including attorney's fees.

Worse still, dilatory, wasteful actions such as these undermine public confidence in government and damage the informal institutional relationship that exists between the Court and the District of Columbia's Office of the Attorney General ("OAG").   Like two old neighbors, our offices are located a stone's throw from each other.   Our personnel interact daily.   So long as the OAG's office exists, its attorneys will appear before this Court.   An amicable relationship— beneficial to all parties—is preferred but not preordained.   It can only exist and endure when each party trusts the other.   And that trust is undermined when OAG attorneys submit pleadings that invert reality and make arguments for the sake of argument.

## V.   CONCLUSION

For the reasons stated above, the Court will grant plaintiff's Motion [ECF No. 49]. Defendant is ordered to pay plaintiff reasonable costs incurred during plaintiff's initial response to defendant's unauthorized discovery request as well as plaintiff's costs for preparing and submitting the instant Motion and Reply.   Plaintiff does not have to respond to any of the discovery requests propounded by defendant and defendant is prohibited from propounding any additional discovery because such requests would violate the Scheduling Order.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed Royce C. Lamberth, Chief Judge, October 4, 2012.