## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ACT NOW TO STOP WAR AND END RACISM COALITION, *et al.,* | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 07-cv-1495 (RCL) |
| THE DISTRICT OF COLUMBIA | ) ) ) | |
| Defendant. | ) ) ) ) | |

## MEMORANDUM OPINION
### (DENYING RECONSIDERATION OF COURT'S OCT. 4, 2012 OPINION AND ORDER)

Before the Court is defendant District of Columbia's Motion for Reconsideration Or, In the Alternative, For a Stay of Payment of Sanctions Until Final Order and Opportunity for Appellate Review, Oct. 12, 2012, ECF No. 70. The District asks this Court to reconsider, strike, and stay its October 4, 2012 Memorandum Opinion and Order. *Act Now to Stop War and End Racism Coal. v. Dist. of Columbia* (*ANSWER IV*), ___ F. Supp. 2d ___, 2012 WL 4712980 (D.D.C. Oct. 4, 2012) (ECF Nos. 67 & 68). Upon consideration of the motion, the plaintiff's Opposition, Oct. 26, 2012, ECF No. 75, the defendant's Reply thereto, Nov. 5, 2012, ECF No. 79, and the record herein, the Court will deny defendant's motion in all respects.

## I.    INTRODUCTION AND BACKGROUND

The District of Columbia and several non-profit political advocacy organizations have been locked in a long-running dispute over the constitutionality of the District's postering regulations. The District allows political signs to be affixed to the District's lampposts, subject

to specified restrictions.  The District calculates how long posters may remain affixed differently based on whether the poster "relates to an event."  The current regulations allow all signs to remain posted for a maximum of 180 days, but require that signs related to an event be removed within 30 days after the related event.  24 D.C. CODE MUN. REGS. § 108 (2012).  The remaining plaintiff, Muslim American Society Freedom Foundation ("MASF") alleges that the law is an unconstitutional content-based regulation of speech, and is impermissibly vague and overbroad.  *See* Pl.'s Mot. Summ. J., June 22, 2012, ECF No. 60.  For a more detailed history of this case, see: *Act Now to Stop War and End Racism Coal. v. Dist. of Columbia* (*ANSWER III*), 798 F. Supp. 2d 134, 134–43 (D.D.C. 2011).

On July 21, 2011, this Court granted in part and denied in part the District's motion to dismiss.  *Id*. at 151–55.  The Court dismissed ANSWER and MASF's as-applied causes of action; only MASF's facial First Amendment and vagueness claims survived.  *Id*. at 155.  The Court directed the case to proceed to discovery, giving the District "an opportunity to clarify the questions remaining about the meaning of the term 'event' and the relation of the event/non-event distinction" in the postering regulations "to the anti-littering interests it asserts."  *Id*.

On October 21, 2011, the parties submitted a Joint Report to the Court discussing how to proceed.  ECF No. 45.  MASF argued that the remaining issues warranted additional discovery, but the District asserted that "discovery is unnecessary here, as the remaining facial vagueness challenge presents a purely legal question."  *Id*. at 3–4; *see also id*. at 6 ("The District objects that initial disclosures are—like all discovery here—inappropriate in this action[.]").  Throughout this Joint Report, the plaintiff repeatedly explained why it needs discovery and how it should take this discovery.  *Id*. at *passim*.  In the Joint Report, the District nowhere asserted a need for discovery, but simply reserved "the right to object to any and all discovery requests[.]"

2

*Id* at 6. The District suggested "a discovery period of no more than 60 days, and that, given the narrow scope of the remaining issued, Plaintiff should be limited to no more than ten (10) interrogatories, five (5) requests for production of documents, and one (1) deposition." *Id* at 7. The District did not state anywhere in the Joint Statement that it intended to or even wanted to take discovery, although it proposed an order providing "that each party may not propound more than ten (10) interrogatories…five (5) requests for production of documents, and may not take more than one (1) deposition[.]" Def.'s Proposed Sched. Order, Oct. 21., 2011, ECF No. 45-1. The plaintiff proposed an order "that the plaintiff is authorized to propound not more than ten (10) interrogatories, ten (10) requests for production, fifteen (15) requests for admission, and take six (6) depositions which shall include within that number any deposition(s) pursuant to Fed. R. Civ. P. 30(b)(6)[.]" Pl.'s Proposed Sched. Order, Oct. 21, 2011, ECF No. 45-2.

The Court entered a Scheduling Order on November 17, 2011, granting word for word MASF's proposed scheduling order. ECF No. 48. The Order authorized and set limits on plaintiff's discovery; it nowhere said that "either party" could take discovery or otherwise provided for discovery by the District. *Id.* Afterwards, the District propounded discovery requests on MASF. *See* Def.'s First Set of Interrogs. to Pls. & Req. Docs., Mar. 9, 2012, ECF No. 49-2. The District even directed interrogatories at ANSWER, although ANSWER was no longer a party to this action after the Court dismissed its remaining claims in June 2011. *Compare id.* ¶ 10 (requesting information about one of ANSWER's as-applied claims); *with ANSWER III*, 798 F. Supp. 2d at 151–55 (dismissing all of ANSWER's claims and making clear that MASF remains the only plaintiff going forward). MASF's counsel[1] objected to these demands, and requested the District either withdraw these requests or explain what authorized

---

[1] Carl L. Messineo and Mara E. Verheyden-Hilliard of the Partnership for Civil Justice have been the counsel of record for both ANSWER and MASF throughout this entire action.

3

them.  Pl.'s Ltr. to Def., Apr. 5, 2012, ECF No. 49-2.  In response, the District took the position that the Court's Scheduling Order only "imposed limits on any discovery sought by plaintiffs [*sic*]" but "did not impose any such limits on the District."  Def.'s Ltr. to Pl., Apr. 9, 2012, ECF No. 49-2.  "As a gesture of good faith and cooperation" the District withdrew "its Interrogatories 6 through 11" and noted that it expected "timely and complete responses to its remaining discovery requests."  *Id*.

With the District refusing to withdraw all its discovery requests, MASF moved for a protective order and an award of reasonable expenses.  Pl.'s Mot. Protective Order, Apr. 11, 2012, ECF No. 49.  MASF maintained that the Scheduling Order did not allow the District to take any discovery, let alone discovery exceeding what the Court allowed the plaintiff to take.  *Id*. at 6–10.  As such, the District violated the Scheduling Order without substantial justification, permitting an award of attorney's fees and costs to MASF.  *Id*. at 11.  The Court granted MASF's motion and awarded MASF its reasonable expenses per Federal Rule of Civil Procedure 16(f).  *ANSWER IV*, 2012 WL 4712980.  The District now asks the Court to reconsider and strike this Opinion and Order, or stay payment of sanctions until the District can seek appellate review.  Def.'s Mot. Reconsideration 1–2, 12, Oct. 12, 2012, ECF No. 70.  For the reasons discussed herein, the Court will deny the District's motion for reconsideration in all respects.

## II.   LEGAL STANDARDS

### A.  Motion for Reconsideration

An interlocutory order "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  "[R]elief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is available 'as justice requires.'"  *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 2011 WL 1097450,

*2 (D.D.C. Mar. 25, 2011) (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000)). "'As justice requires' indicates concrete considerations of whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.'" *Id.* (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)) (alteration in original). Therefore, "[i]n general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003)). The court's discretion to grant a Rule 54(b) motion is "'subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Judicial Watch v. Dep't of the Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (quoting *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

### B.  Motion to Strike

Under Federal Rule 12(f), a court may strike all or part of a pleading for insufficiency, redundancy, immateriality, impertinence, or scandalousness. *See* Fed. R. Civ. P. 12(f); *Judicial Watch, Inc. v. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004). These motions are strongly disfavored, and the decision of whether to strike all or part of a pleading rests within the sound discretion of the court. *See Judicial Watch*, 224 F.R.D. at 263 (collecting authorities); 2-12 MOORE'S FEDERAL PRACTICE-CIVIL § 12.37 (2006). Most courts have held that Rule 12(f) motions "only may be directed towards pleadings as defined by Rule 7(a)" and therefore

"motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)." 5C WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1380 (3d ed. 2012). While some have allowed motions to strike directed at affidavits and other party submissions, *see Gauthier v. United States*, 2011 WL 3902770, *11 (D. Mass. 2011), 12(f) motions cannot be directed at the court's opinions and memoranda. A "motion to strike is considered an exceptional remedy and is generally disfavored," *Larouche v. Dep't of the Treasury*, 2000 WL 805214, *13, (D.D.C. Mar. 31, 2000) (citing MOORE'S at § 12.37), and the proponent must carry a "formidable burden," *Judicial Watch*, 224 F.R.D. at 264.

## III.   DISCUSSION

### A.  Motion for Reconsideration

The District has made no showing that the Court's Opinion merits reconsideration. The District may disagree with the Court, but it has not explained whether there has been an intervening change in the law, discovery of new evidence, or clear error warranting reconsideration. *Zeigler*, 555 F. Supp. 2d at 129. Instead, it appears to be a vehicle to reair settled grievances and attack the Court's reputation. *See Judicial Watch*, 466 F. Supp. 2d at 123 (discouraging reconsideration when party merely seeks second bite at the apple). While suggesting the Court committed clear error, the District seriously misapprehends why the Court imposed sanctions—claiming the sanctions were based on 'inherent powers,' when the Court made clear they were based on Rule 16(f). *Compare* Def.'s Mot. Reconsideration 6; Def.'s Reply 4–6 (discussing inherent power sanctions for bad faith); *with ANSWER IV*, 2012 WL 4712980, *5 (awarding sanctions under Rule 16(f) express powers). Nevertheless, the Court will re-explain in detail why the Court issued sanctions and carefully consider each of the District's

arguments.    The District should not mistake the Court's in-depth discussion for an acknowledgement that the District's positions were particularly strong or substantially justified.

The Court wants to be very clear on the legal authority under which it awarded reasonable expenses.  The Court found that the Scheduling Order did not authorize the District's propounded discovery.  *ANSWER IV*, 2012 WL 4712980, *4–*5.  Having found that the District violated the Scheduling Order,[2] the Court turned to Rule 16(f)(2):

> Instead of or in addition to any other sanction, **the court *must* order the party**, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2) (emphasis added).  This Rule "mandates the imposition of sanctions in the form of reasonable expenses" for a "failure to obey a scheduling or pretrial order[.]" *Landmark Legal Foundation v. E.P.A.*, 272 F. Supp. 2d 70, 88 (D.D.C. 2003).  This Rule, and its mandate of attorney's fees, protects the ability of the Court to manage its docket:

> Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions…. The Federal Rules of Civil Procedure explicitly authorize the establishment of schedules and deadlines, in Rule 16(b), and the enforcement of those schedules by the imposition of sanctions, in Rule 16(f).

*Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005).  After a court finds a party violated a Scheduling Order, it considers whether the violation was "substantially justified" or imposing costs would be otherwise "unjust."  *See, e.g., Pyramid Real Estate Services, LLC v. United States*, 95 Fed. Cl. 613, 617 (2010) ("When a party or a party's attorney

---

[2] The District now seems to concede that its discovery requests violated the Scheduling Order, and instead argues that its erroneous interpretation of the Court's Order was not made in bad faith, and therefore sanctions are not warranted.  *See* Def.'s Mot. Reconsideration 7 ("The District's interpretation of the Scheduling Order was reasonable, if erroneous."); *id*. at 11 ("[T]he District's interpretation of the Scheduling Order was erroneous in hindsight[.]").

fails to obey a pretrial order, [] 16(f) directs that the court 'must' impose sanctions 'unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.') (applying R. Ct. Fed. Cl. 16(f)(2), which is identical to Fed. R. Civ. P. 16(f)(2)).  The Court has wide discretion to determine whether and what sanctions to impose, *Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C. Cir. 1987), and this decision is reviewed for an abuse of discretion, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962).  *See also Matter of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc), *cert. denied*, 471 U.S. 1014 (1985) (Rule 16(f) "indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.").

The Court's Opinion spent three paragraphs discussing Rule 16, the importance of scheduling orders, and the sanctions provided by 16(f)(2).  At the end of this lengthy discussion, the Court briefly mentioned its inherent powers to impose sanctions, stating:  "The Court's power is both express, in the form of the Federal Rule, and implicit, flowing from the very nature of the Court as an institution."  *ANSWER IV*, 2012 WL 4712980, *4.  Ignoring the Court's detailed application of Rule 16(f), the District's motion seizes on this passing reference and claims that the Court "awarded sanctions, under its inherent powers, in the form of plaintiff's reasonable expenses[.]"  Def.'s Mot. Reconsideration 6.  The District dedicates the bulk of its motion to explaining why the District's actions did not constitute the bad faith necessary for the Court to award inherent power sanctions.  *Id*. at 9–11.  The District's motion cites fourteen different cases concerning bad faith and the Court's inherent powers.  *Id*. at *passim*.  This represents almost two-thirds of all the cases the District cites in its Motion for Reconsideration.

The District's strong emphasis on inherent powers and bad faith is misplaced.   The Court's opinion relied on inherent powers as many times as the District's reconsideration motion mentioned Rule 16: zero.   The Court made it clear that it relied on Rule 16(f):

> While the Court encourages thorough pleadings supported by abundant legal research and analysis, the present motion is so simple that the plaintiff did not need much legal analysis to meet its burden under Rule 16(f).   A Scheduling Order[] serves as "unalterable road map (absent good cause) for the remainder of the case."   *Olgyay*, 169 F.R.D. 219, 220 (D.D.C. 1996) (internal quotation marks and citation omitted).   Moreover, the Rule is clear: Federal courts can sanction and require parties or their attorneys to pay costs stemming from a violation of a scheduling order.   F.R.C.P 16(f).   In addition to the express rule, it is a basic maxim that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."   *Anderson v. Dunn*, 19 U.S. 204, 227 (1821).   Therefore, to meet its burden plaintiff need do no more than cite the Federal Rule and this Court's Scheduling Order then provide evidence demonstrating that defendant violated the Court's Order.   It did just that.   *See generally* Pl.'s Mot. Protect. Order [49], Apr. 11, 2012.

*ANSWER IV*, 2012 WL 4712980, *5.   The Court's passing mention of its inherent powers is subordinate to its explicit invocation of its express powers under Rule 16(f).

Stressing that the Court did not "'make a finding by clear and convincing evidence that [the party] committed sanctionable misconduct that is tantamount to bad faith,'" Def.'s Mot. Reconsideration 9 (quoting *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011)), argues the wrong standard.   The Court did not impose severe sanctions such as dismissing the action or precluding evidence; it imposed the sanction provided by Rule 16(f)(2).   *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984) (Under Rule 16(f)(2) "the district court is specifically authorized to impose…expenses, including attorney's fees, caused by unjustified failure to comply with discovery orders or pretrial orders.").   "At least to the extent that the opposing party should be compensated for the reasonable costs and expenses incurred because of counsel's non-compliance" with Rule 16 "the rule is almost, but not quite, mandatory.   Unless noncompliance

was 'substantially justified' or other circumstances would make an award 'unjust' the nondefaulting party is entitled to reimbursement.  As a result, the imposition of sanctions under the rule does not depend upon a finding of bad faith, willfulness, or contumaciousness." *In re Philbert*, 340 B.R. 886, 890 (Bankr. N.D. Ind. 2006) (citations omitted); s*ee also Matter of Baker*, 744 F.2d at 1440 ("It is clear from the language and the context in which [the 1983] amendment [adding subsection (f) to Rule 16] was enacted that neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions.").

The District identified the wrong standard, failed to discuss the correct standard, and made no argument that its interpretation of the Scheduling Order was "substantially justified," rather than merely not in bad faith.  To be generous to the District, the Court will explain why the District's violation of the Order was not substantially justified under Rule 16(f)(2).

What is the standard for determining whether a position is "substantially justified"? Twenty years ago, the United States District Court for the Southern District of Iowa observed that "[t]here is little case law discussing the term 'substantially justified' in Rule 16(f)." *Jochims v. Isuzu Motors, Ltd.*, 144 F.R.D. 350, 355 (S.D. Iowa 1992).  Over time, courts have looked to how "substantially justified" is used and defined elsewhere to explain its meaning under 16(f). The term appears in Federal Rule of Civil Procedure 37(a)(5), which provides that if a court grants a protective order, it "must…require the party…whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless, *inter alia*, the opposing party's position was "substantially justified." The Advisory Committee states that 16(f) was modeled after Rule 37, *Advisory Comm.'s Notes on 1983 Am. to Fed. R. Civ. P. 16*, and courts have turned to cases under Rule 37 to determine the meaning of "substantially justified" elsewhere.  *See Jochims*, 144 F.R.D. at 355 (applying

Rule 37 cases to Rule 16(f) context); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (using meaning lower courts have attached to "substantially justified" under Rule 37 to determine meaning of term in Equal Access to Justice Act).

The Supreme Court, drawing on cases discussing Rule 37, defined "substantially justified" as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. That is no different from…[having] a reasonable basis in both law and fact." *Pierce*, 487 U.S. at 565. A position "that is neither 'foolish,' 'egregious,' 'extreme,' nor 'frivolous' is not necessarily substantially justified."[3] *Halverson v. Slater*, 206 F.3d 1205, 1210 (D.C. Cir. 2000). "[A] party's position is not substantially justified if there is no legal support for it, if the party concedes the validity of his opponent's position after [costing] everyone time and money, or, worse, defies an unequivocally clear obligation." *Boca Investerings P'ship v. United States*, 1998 WL 647214, *2 (D.D.C. 1998), *rev'd on other grounds*, 314 F.3d 625 (D.C. Cir. 2003). To find a position was not substantially justified, "[t]here is no requirement that the court find that counsel acted in bad faith." *Cobell v. Norton*, 213 F.R.D. 16, 29 (D.D.C. 2003). "The burden is on the party facing sanctions to prove that its violation was…substantially justified." *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008) (discussing Rule 37 sanctions).

The District's basic argument is that the Court's Scheduling Order was ambiguous on whether the District could seek discovery. As discussed in Part I *supra*, the Court adopted in toto the plaintiff's proposal and entered an order allowing MASF to take limited discovery. The

---

[3] The District now concedes that although its position "may have been erroneous, mistaken, **or even negligent**," it was not "taken in bad faith" and therefore the Court erred in awarding sanctions. Def.'s Reply 7 (emphasis added). This, again, misapplies the standard under 16(f). It would be difficult for a *negligent* violation of a Scheduling Order to be "substantially justified."

11

District read this to mean that the Court "imposed limits on any discovery sought by plaintiffs[4] [*sic*], but did not impose any such limits on the District."  Def.'s Mot. Reconsideration 6.

The District's position is plausible only at the most superficial of levels.  When considered in context, the Court cannot consider the District's position "substantially justified."  The history of this case indicates that the Court did not mean to authorize discovery for the District in excess of what it authorized for the plaintiff.[5]  The Court's July 2011 Opinion left only MASF's facial constitutional challenges.  *ANSWER III*, 798 F. Supp. 2d 151–55.  That Opinion stated that the case should proceed to discovery on the meaning of the word "event" and the relation of the event/non-event distinction to any content-neutral interest the District invokes.  *Id*. at 155.  The parties' Joint Report only discussed the need for plaintiff to take discovery; the District rejected the notion that either party would need to take discovery.  Joint Report 3–4, 6–7.  While the District's proposed order *did* request discovery for both sides, nowhere in the Joint Report did it mention or justify its need for discovery.  Joint Report *passim*; Def.'s Proposed Sched. Order.  The Court granted the plaintiff's proposed order *word for word*—the reasonable inference being the Court rejected the District's proposed order and its unjustified and unexplained request that both sides take discovery.  Sched. Order, ECF No. 48.  The procedural

---

[4] The District's Motion for Reconsideration keeps referring to "plaintiffs" in the plural, although for over a year there has only been one plaintiff in this action, MASF.  This may be an innocent mistake—typos are unavoidable—but the District has forgotten in the past that the Court dismissed ANSWER and all its remaining claims in July 2011.  *See* Def.'s First Set of Interrogs. to Pls. & Req. Docs., Mar. 9, 2012, ECF No. 49-2 (propounding interrogatories against ANSWER and its dismissed claims almost 8 months after ANSWER no longer a party to the action).

[5] While the Scheduling Order limited the plaintiff to 10 interrogatories, the District propounded 11 interrogatories, and took the position that it could engage in discovery limited only by the default rules of litigation.  *See* Def.'s First Set of Interrogs. (eleven interrogatories); Def.'s Ltr. to Pl. 1.  Under the default rules, the District could propound 25 written interrogatives—more than twice the number plaintiff was allowed.  Fed. R. Civ. P. 33(a) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories[.]").

context of this case undermines the District's argument that the Scheduling Order was "ambiguous" and therefore its violation thereof was "substantially justified."

The District maintains that "it would be extraordinary if the Court had meant to deny the District from taking any discovery, but did not state that fact in explicit language." Def.'s Mot. Reconsideration 8.  More extraordinary than the District's position that the Court—in granting *plaintiff's* proposed Scheduling Order—meant to limit only the plaintiff and allow the District to engage in discovery limited only by the default rules of litigation?  More extraordinary than thinking that the District could propound discovery on parties and claims long since dismissed?[6]

Scheduling Orders provide the "'unalterable roadmap...for the remainder of the case.'" *Olgyay v. Soc'y for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 219–20 (D.D.C. 1996). (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia* 39 (Aug. 1993)).  The purpose of Rule 16 "is to promote the ability of the Court to manage cases, to develop 'a sound plan to govern the particular case from start to finish' and to 'set[] and keep[] firm pretrial and trial dates.'"  *Id.* at 220 (quoting *Final Report of the Civ. Justice Advisory Gp.* 37–39).  Scheduling Orders—so they can achieve these purposes—should be read as being specific and comprehensive.  When an Order details the scope of permissible discovery, a party should not read into the gaps permission to propound whatever discovery it so wishes.

---

[6] While the District offered, as a gesture of "good will," to withdraw its requests directed at ANSWER, the reasonableness of a party's action must be considered in context.  Def.'s Ltr. to Pl. 1.  The District claims that its discovery requests were simply an "honest mistake" made in good faith.  *See* Def.'s Mot. Reconsideration 11.  In the same document wherein the District claims it made the "objectively reasonable" error of requesting discovery from MASF, Def.'s Mot. Reconsideration 5, the District made the inexplicable and unreasonable error of requesting discovery from ANSWER.  In fact, more than half of the District's submitted interrogatories were directed at ANSWER and its dismissed claims.  Def.'s First Set of Interrogs., Interrogs. 6–11, inclusive.

A basic canon of statutory interpretation—*expressio unius est exclusio alterius*, Latin for "the express mention of one thing excludes all others"—dictates that "explicit direction for something in one provision, and its absence in a parallel provision, implies an intent to negate it in the second context." *Cheney R. Co. v. Interstate Commerce Comm'n*, 902 F.2d 66, 68 (D.C. Cir. 1990). The Scheduling Order is not a statute, but this canon is "used frequently in our daily lives" and helps explain the reasonable inferences someone may draw from silence. Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012). The *expressio unius* canon depends on the context of the speech, and where the language is "more specific...the greater the force of the canon." *Id*. at 108. A simple example will help explain *expressio unius*. A manager gives her employee the company credit card and detailed instructions to buy three reams of a specific type of paper. The employee returns with the paper, three iPads and five iPhones. The manager is furious: "I never told you could buy that! I gave you very specific instructions!" The employee responds: "Well, you never said I *couldn't* buy a bunch of iPads. In the future, you really need to tell me that." The manager yells: "*Expressio unius est exclusio alterius*!" and fires the employee.

Silence is not a blank check. The Court's Scheduling Order is silent on expert witnesses, but the Court is confident that if MASF tried to introduce experts, the District would have requested a protective order and reasonable expenses. When determining whether a position is substantially justified, the legal and factual context is everything. It was not reasonable, given the history of this case, that the Court's specific and explicit authorization of plaintiff's discovery would grant the District more discovery rights than the plaintiff *sub silentio*.

If the Court found the District's interpretation substantially justified, it would seriously undermine the protections afforded by Rule 16. Scheduling Orders are extremely important;

"[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Lurie v. Mid-Atl. Permanente Med. Group, P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008). Courts in this circuit have been very protective of Scheduling Orders:

> Neither the parties nor their counsel have the authority to stipulate or otherwise agree to changes in the Court's orders regarding discovery or any other scheduling matter unless expressly authorized to do so by Rule or by Court order. Rule 16 of the Federal Rules of Civil Procedure makes plain that a scheduling order entered by a district judge "shall not be modified except upon a showing of good cause and by leave of the district judge...," Rule 16(b), Fed. R. Civ. P., and it authorizes the judge to impose sanctions on a party or a party's attorney for failure to obey a scheduling order. Rule 16(f), Fed. R. Civ. P. Rule 206 of the Rules of this Court requires counsel to meet and confer before the scheduling conference and to propose to the Court, *inter alia*, a specific date for the completion of all discovery. Local Rule 206(c)(8). Once the schedule proposed by the parties is accepted or modified by the Court and memorialized in a scheduling order, the scheduling order may not be modified except by the Court and then only upon a showing of good cause. Local Rule 206.1.

*Olgyay*, 169 F.R.D. at 219–20 (D.D.C. 1996). See also:

> "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Indeed, "[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier." *Id.* As such, Rule 16 of the Federal Rules of Civil Procedure makes plain that a scheduling order entered by a district judge "shall not be modified except upon a showing of good cause and by leave of the district judge...." Fed. R. Civ. P. 16(b); *see also* LcvR 16.4[.]

*Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005). The Rule does not require a finding of bad faith before awarding sanctions, but puts the burden on the noncompliant party to show its violation was substantially justified. The District's exegesis is questionable on its face, and unreasonable when in context. Rule 16(f) protects against not only the most "'foolish,' 'egregious,' 'extreme,' [or] 'frivolous'" of positions, *Halverson*, 206 F.3d at 1210, but positions without a "reasonable basis in both law and fact." *Pierce*, 487 U.S. at 565.

Even if the District were correct that the Scheduling Order does not prohibit the District from taking discovery, MASF would still be entitled to reasonable expenses.  The District claims that the "'default' in civil litigation is that Fed. R. Civ. P. 26(b) authorizes *both* sides '[u]nless *otherwise limited* by court order,…[to] obtain discovery regarding any nonpriviliged matter that is relevant to any party's claim or defense….'"  Def.'s Mot. Reconsideration 8 (quoting Fed. R. Civ. P. 26(b)) (alterations and emphasis in original).  Scheduling Order notwithstanding, the 'default rules of litigation' still prohibit the District's requests.  In what way were the District's requests justified by 26(b)?  The only claim left is MASF's facial, constitutional challenge—a fact the District recognized when arguing no discovery was warranted in this action.  Joint Report 1, 3–7.  The Court indicated that discovery was appropriate to determine the meaning of the term 'event' and the relation between the distinction drawn by the law and the District's possible content-neutral interests.  *ANSWER III*, 798 F. Supp. 2d at 155.  How could *anything* in plaintiff's possession be relevant to the remaining issues?  It makes no sense for the District to ask MASF why the District passed the sign regulations, how making a distinction between events and non-events furthers the District's interests, and how the District defines the term 'event.'  Nothing "relevant" to the remaining claims could come from MASF.[7]  Fed. R. Civ. P. 26(b).  Furthermore, Rule 26(b)(2)(C) would bar any request by the District on the remaining relevant matters.  Any discovery about the purposes, implementation, and meaning of the

---

[7] No, the Court need not make it explicit that the parties could only conduct discovery on the remaining issues, and not on issues that have been dismissed.  It is a basic, default rule of civil litigation that discovery may only be obtained on matters relating to pending—not dismissed—claims.  *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken…unless the information sought is otherwise relevant to issues in the case."); *United States v. Kellogg Brown & Root Services, Inc.*, __ F.R.D. __, 2012 WL 3776708, *10 (D.D.C. Aug. 31, 2012) (Lamberth, C.J.) (citing *Tequila Centinela v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 5–6 (D.D.C. 2007); *Oppenheimer Fund*, 437 U.S. at 352)).

District's regulations "can be obtained from some [ ] source" other than MASF "that is more convenient, less burdensome, or less expensive"—namely the District itself.  Fed. R. Civ. P. 26(b)(2)(C)(i).  As such, MASF would be entitled to a protective order from the District's irrelevant and impermissible discovery under Rule 26(c), and reasonable expenses under Rule 37(a)(5).  Rule 37, on which the Advisory Committee based 16(f), also makes the payment of attorney's fees and costs mandatory unless the District's position was "substantially justified" or an award of expenses would be otherwise "unjust."[8]

### B.  Motion to Strike

The District asks for a highly disfavored type of motion without coming close to meeting its substantial burden of showing that such an order is merited.  *See*, *e.g.*, *Judicial Watch*, 224 F.R.D. at 263–64 (motions to strike strongly disfavored and party requesting one must shoulder a formidable burden).  The District's failure to meet this burden is enough to deny its motion.

The District takes issue with some of the strong language the Court used to describe the District's actions.  Def.'s Mot. Reconsideration *passim*.  The Court will not belabor those statements here.  Quite simply, the District has not identified how and why the Court should strike passages from its Memorandum Opinion simply because the District's attorneys took personal offense to them.  The Federal Rules provide for no motions for reconsideration for hurt feelings, no motions to strike things that could make you look bad.

If the Court misapprehended the facts or misapplied the law, upon granting a Rule 54(b) motion to reconsider the Court would have vacated its earlier opinion.  *See Sussman v. U.S.*

---

[8] Rule 37 also prohibits an award of sanctions if "the movant filed the motion before attempting in good faith" to confer with the other party. Fed. R. Civ. P. 37(a)(5)(A)(i).  MASF met its duty to confer by sending the District a letter asking the District to withdraw all of its discovery requests, and explaining why MASF thought such discovery was unauthorized.  Pl.'s Ltr. to Def., ECF No. 49-2.

*Marshals Serv.*, Mem. Op. & Order, ECF No. 121, 03-cv-610 (D.D.C. Dec. 12, 2011) (Lamberth, C.J.) (in granting motion for partial reconsideration because of misapplication of circuit mandate, vacating portion of earlier memorandum).   As the Court explained in the previous section, the Court's award of reasonable expenses was sound.   The District cites Rule 12(f) in a footnote, stating that the Rule "authorizes the striking of material in pleadings that is 'redundant, immaterial, impertinent, or scandalous[.]'"   Def.'s Mot. Reconsideration 8 n.2 (quoting Fed. R. Civ. P. 12(f)).   Most Court have limited 12(f) to the "pleadings" as defined in Rule 7(a), while a minority have extended it to other party submissions such as affidavits and expert reports.   5C Wright, Miller & Kane, Federal Practice & Procedure § 1380 (3d ed. 2012).   This Court searched, in vain, for a single case where a party used a Rule 12(f) motion to strike unflattering passages from a judicial opinion.   There is not a shred of law, not a colorable argument that Rule 12(f) has anything to do with judicial opinions or non-party submissions.

### C.  Motion to Stay

The Court will not grant the District's motion in the alternative to stay the payment of sanctions until a final order is entered and the District can seek appeal.   Sanctions may deter a party from continuing to commit sanctionable conduct in the present action.   *Cf. Shea v. Donahoe Const. Co., Inc.*, 795 F.2d 1071, 1077 (D.C. Cir. 1986) (financial sanctions against attorneys "might well have brought them into compliance with the court's need to move the case ahead").   Such specific deterrence is seriously undermined when the party is allowed to defer its sanction until *after* final judgment.   The District provides no justification—other than its disagreement with the sanctions in the first place—for why a stay is appropriate.

## IV.    CONCLUSION

The District asks the Court to reconsider, strike, or stay its prior Order and Opinion without establishing why these measures are warranted.   These kinds of motions are either disfavored, or within the sound discretion of the Court.   In lieu of explaining how the legal standards for granting these motions have been met, the bulk of the District's filings either discuss the wrong standard for issuing sanctions or chastise the Court for its "vituperative rhetoric."  Def.'s Mot. Reconsideration 2.

When considering whether sanctions are appropriate, a court must look the behavior and conduct of the attorneys before it.   It is hard to call a party's conduct sanctionable, its position unreasonable or not substantially justified, without reflecting poorly on the party's counsel.   The District objects to the tone and tenor of the Court's description, calling the language unnecessary while itself flippantly accusing the Court of bias and intemperance.[9]   Strong sanctions are one tool for case management.   Other times, courts limit available sanctions while sternly warning the noncompliant party that its actions are unacceptable.  *Cf. Chambers v. NASCO, Inc*., 501 U.S. 32, 44-45 (1991) ("A primary aspect of [judicial] discretion is the ability to fashion an

---

[9] The District stated:  "While judicial criticism ordinarily does not support a traditional finding of bias sufficient to require recusal, *Klayman v. Judicial Watch, Inc*., 628 F.Supp.2d 98, 105 (D.D.C. 2009), the harsh and repeated rhetoric employed here may cause a 'reasonable and informed observer' to conclude that the Court has 'display[ed] a deep-seated…antagonism that would make fair judgment impossible.'  *Id*. at 105–06."  Def.'s Mot. Reconsideration 8 n.2.  This casual allegation is completely untethered to any of the legal arguments put forth by the District.  The District does not relate this accusation to why it is entitled to reconsideration; in fact, given its context it seems argue that the Court's language was "scandalous" under Rule 12(f).  But logically, this accusation of bias cannot be related to 12(f)—a Rule about *pleadings* that has nothing whatsoever to do with what the Court says.

The plaintiff's Opposition also shows that the District has freely engaged in vituperative rhetoric when describing MASF's arguments.  *See* Pl.'s Opp'n 18–19 n.10 (District attacking plaintiff for "presenting 'histrionic rhetoric,' presenting 'histrionic assertions,' as being 'disingenuous.' as advancing constitutional claims that 'strain[] credulity,' exist 'only in plaintiff's imagination,' that are supported only by 'rambling narrative' and that constitute 'a vain attempt to show that the postering regulations violate the First Amendment.'") (internal citations omitted).

appropriate sanction for conduct which abuses the judicial process."). The firm language is not punitive but corrective, putting the party on notice that the court will not tolerate such sanctionable conduct going forward. It is within the sound discretion of the trial court to determine what sanctions to impose, how to warn the parties their conduct is impermissible. *Cf. Flynn v. Dick Corp.,* 481 F.3d 824, 835 (D.C. Cir. 2007) (acknowledging that district court has broad discretion in managing discovery, and "[t]his deference [accorded by the circuit] extends to the district court's imposition of discovery sanctions").

The Court holds no ill will against the District; today, it thoroughly and seriously considers a motion that is thick with attacks on this Court's integrity and thin on the law. In its previous opinion, the Court levied the minimum sanctions provided by Rule 16(f)(2). It sanctioned the party, not the individual attorneys. It did not turn to its inherent powers or the stronger sanctions authorized by Rules 16(f)(1) and 37(b)(2).

The Court understands that accusations of bias from frustrated parties are part of the job and does not take them personally. The Court recognizes that the District's Office of the Attorney General ("OAG") has a number of "hard-working dedicated lawyers." *See* Def.'s Mot. Reconsideration 11. The Court knows that the OAG is capable of intelligent, thoughtful lawyering. But when the District falls short of the standards established by the Federal Rules,[10] the Court does not have to sit silent in fear of having its objectivity called into question.

---

[10] While the OAG has a number of hard-working and accomplished lawyers, it is not immune from committing sanctionable conduct. For a non-comprehensive list of cases sanctioning the District of Columbia for significant discovery and litigation abuses, see: *Hutchence v. Dist. of Columbia*, 793 F. Supp. 177 (D.D.C. 2011); *D.L. v. Dist. of Columbia*, 274 F.R.D. 320 (D.D.C. 2011); *Salazar ex rel Salazar v. Dist. of Columbia*, 602 F.3d 431 (D.C. Cir. 2010) (affirming in part sanctions against District); *Bolger v. Dist. of Columbia*, 248. F.R.D. 339 (D.D.C. 2008); *McDowell v. Dist. of Columbia*, 233 F.RD. 192 (D.D.C. 2006); *Zenian v. Dist. of Columbia*, 283 F. Supp. 2d 36 (D.D.C. 2003); *Butera v. Dist. of Columbia*, 235 F.R.D. 637 (D.C. Cir. 2001) (affirming sanctions); *Webb v. Dist. of Columbia*, 189 F.R.D.

Having re-explained why the Federal Rules justified the Court's decision to award MASF reasonable expenses, finding no legal justification to reconsider or strike portions of that opinion, and no reason to issue a stay, the Court will deny the District's motion in all respects.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed, Royce C. Lamberth, Chief Judge, November 19, 2012.

---

180 (D.D.C. 1999); *Cousin v. Dist. of Columbia*, 142 F.R.D. 574 (D.D.C. 1992); *Green v. Dist. of Columbia*, 134 F.R.D. 1 (D.D.C. 1991).

    The plaintiff's Opposition shows that the District has engaged in serious, sanctionable conduct in other cases involving plaintiff's counsel. Pl.'s Opp'n 18–26. In *Partnership for Civil Justice Fund v. Dist. of Columbia*, Case No. CAB-748-09, Judge Masaluso of the Superior Court of the District of Columbia criticized OAG counsel for filing false affidavits when resisting a FOIA request: "As an officer of the Court and by virtue of your job you have a calling and ethical responsibilities. You are responsible for the accuracy of every document that you file in court, and those affidavits are transparently false. A fact you have to know. The District's willingness to rely upon false documents undermines every argument the District of Columbia puts forward." *See* Pl.'s Opp'n 21. In *Barham v. Ramsey*, Civil Action No. 02-2283, Judge Emmet Sullivan of the U.S. District Court for the District of Columbia criticized the OAG for a "pattern of discovery abuses engaged in and repeatedly acknowledged by the District" and stated that the OAG's conduct "raises serious doubts about when, if ever, can anyone trust the government. There are serious, serious problems…." *See* Pl.'s Opp'n 23. In *Bolger v. Dist. of Columbia*, Civil Action No. 03-906, Judge John Bates of the U.S. District Court for the District of Columbia sanctioned the District more than $90,000 for a "a clear case of sanctionable discovery misconduct." *See* Pl.'s Opp'n 26.