**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| ACT NOW TO STOP WAR AND END | ) | |
| RACISM COALITION, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 07-cv-1495 (RCL) |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**(AWARDING AND CALCULATING REASONABLE ATTORNEYS' FEES)**

Before the Court is plaintiff's Submission and Affidavits for Reasonable Attorneys' Fees and Costs Pursuant to the Court's October 4, 2012 Memorandum Opinion and Order, Oct. 18, 2012, ECF No. 72. The Court found that the defendant District of Columbia violated a scheduling order without substantial justification, and awarded plaintiff reasonable costs under Federal Rule of Civil Procedure 16(f)(2). *Act Now to Stop War and End Racism Coal. v. Dist. of Columbia* (*ANSWER IV*), ___ F. Supp. 2d ___, 2012 WL 4712980 (D.D.C. Oct. 4, 2012) (ECF Nos. 67 & 68). Pursuant to this Opinion and Order, the plaintiff now submits its request for attorneys' fees. Upon consideration of the plaintiff's motion, the District's Opposition, Oct. 26, 2012, ECF No. 75, the plaintiff's Reply thereto, Nov. 13, 2012, ECF No. 80, and the record herein, the Court will grant in part plaintiff's motion and enter an award of $15,911.00.

## I.    INTRODUCTION AND BACKGROUND

The District of Columbia and several non-profit political advocacy organizations have been locked in a long-running dispute over the constitutionality of the District's postering

regulations.  The District allows political signs to be affixed to the District's lampposts, subject to specified restrictions.  The District calculates how long posters may remain affixed differently based on whether the poster "relates to an event."  The current regulations allow all signs to remain posted for a maximum of 180 days, but require signs related to an event be removed within 30 days after the related event.  24 D.C. CODE MUN. REGS. § 108 (2012).  The remaining plaintiff, Muslim American Society Freedom Foundation ("MASF"), alleges that the law is an unconstitutional content-based regulation of speech, and is impermissibly vague and overbroad. *See* Pl.'s Mot. Summ. J., June 22, 2012, ECF No. 60.  For a more detailed history of this case, see: *Act Now to Stop War and End Racism Coal. v. Dist. of Columbia* (*ANSWER III*), 798 F. Supp. 2d 134, 134–43 (D.D.C. 2011).

On July 21, 2011, the Court granted in part the District's motion to dismiss.  The Court dismissed all claims except MASF's facial constitutional challenges, and directed the case to proceed to discovery, giving the District "an opportunity to clarify the questions remaining about the meaning of the term 'event' and the relation of the event/non-event distinction" in the postering regulations "to the anti-littering interests it asserts." *Id.* at 151–55.

On October 21, 2011, the parties submitted a Joint Report discussing how to proceed. ECF No. 45.  MASF argued that the remaining issues warranted additional discovery, but the District asserted that "discovery is unnecessary here, as the remaining facial vagueness challenge presents a purely legal question." *Id.* at 3–4.  The District did not state anywhere in the Joint Statement that it sought discovery, although it proposed an order providing "that each party may not propound more than ten (10) interrogatories…five (5) requests for production of documents, and may not take more than one (1) deposition[.]"  Def.'s Proposed Sched. Order, Oct. 21, 2011, ECF No. 45-1.  The plaintiff proposed "that the plaintiff [be] authorized to propound not more

than ten (10) interrogatories, ten (10) requests for production, fifteen (15) requests for admission, and take six (6) depositions which shall include within that number any deposition(s) pursuant to Fed. R. Civ. P. 30(b)(6)[.]"  Pl.'s Proposed Sched. Order, Oct. 21, 2011, ECF No. 45-2.

The Court entered a Scheduling Order on November 17, 2011, granting word for word MASF's proposed scheduling order.  ECF No. 48.  It authorized the plaintiff to take limited discovery; it did not provide for any discovery by the District.  *Id.*  Afterwards, the District's Office of the Attorney General ("OAG") propounded discovery requests on MASF (and ANSWER, who was no longer a party to the action).  *See* Def.'s First Set of Interrogs. to Pls. & Req. Docs., Mar. 9, 2012, ECF No. 49-2.  MASF's counsel objected and asked the District to either withdraw these requests or explain what authorized them.  Pl.'s Ltr. to Def., Apr. 5, 2012, ECF No. 49-2.  In response, the District claimed that the Court's Scheduling Order only "imposed limits on any discovery sought by plaintiffs [*sic*]" but "did not impose any such limits on the District."  Def.'s Ltr. to Pl., Apr. 9, 2012, ECF No. 49-2.

With the District refusing to withdraw all its discovery requests, MASF requested a protective order and an award of reasonable expenses.  Pl.'s Mot. Protective Order, Apr. 11, 2012, ECF No. 49.  MASF maintained that the District's unauthorized discovery requests violated the Scheduling Order without substantial justification.  *Id.* at 11.  The Court granted MASF's motion and awarded MASF their reasonable expenses per Federal Rule of Civil Procedure 16(f).  *ANSWER IV*, 2012 WL 4712980.  The District then asked the Court to reconsider and withdraw this Opinion and Order.  Def.'s Mot. Reconsideration 1–2, 12, Oct. 12, 2012, ECF No. 70.  In an opinion issued this date, the Court denies this Motion for Reconsideration and the District's alternative request that the Court stay payment of sanctions

until final judgment and an opportunity for appellate review.  Mem. Op. & Order Denying Def.'s Mot. Reconsideration and to Stay, Nov. 19, 2012, ECF Nos. 81 & 82.

Pursuant to the Court's Order in *ANSWER IV*, the plaintiff has submitted a petition for reasonable attorneys' fees and costs, accompanied with itemized invoices and supporting affidavits.  Oct. 18, 2012, ECF No. 72.  The plaintiff originally requested $16,389.00, and revised this number downward to $16,211.00 in its Reply.  Pl.'s Reply ISO its Mot. Att'ys' Fees 18, Nov. 13, 2012, ECF No. 80 ("Pl.'s Reply").  The District, in its Opposition, claims the plaintiff is entitled to no more than $12,554.50 (or $11,842.50—the District provides two different numbers without explanation).  Def.'s Opp'n to Pl.'s Mot. Att'ys' Fees 6, Nov. 1, 2012, ECF No. 77 ("Def.'s Opp'n").  After scrutinizing the plaintiff's submission and considering the District's objections, the Court finds that the plaintiff is entitled to an award of $15,911.00.

## II.    LEGAL STANDARD

Scheduling Orders, as provided by Federal Rule of Civil Procedure 16 and Local Rule 16, are important case management tools.  Local Rule 16.3 imposes a duty to confer on the parties, who must discuss a variety of pre-trial and discovery matters and submit a joint report to the court.  After considering this submission, the court shall enter a scheduling order governing the rest of the action.  LcvR 16.4.  This order is "intended to serve as the unalterable road map (absent good cause) for the remainder of the case."  *Olgyay v. Soc. for Envtl. Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C. 1996) (internal quotation marks omitted).  When a party violates the scheduling order, Federal Rule 16(f)(2) provides:

> Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees— incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2).  Awarding reasonable expenses under this provision does not require a finding of "bad faith."  *See*, *e.g.*, *Matter of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc), *cert. denied*, 471 U.S. 1014 (1985).  Some courts have said Rule 16(f)(2) sanctions flow almost automatically from a violation of a scheduling order, unless the court finds the violation was "substantially justified" or sanctions would be otherwise unjust.  *See*, *e.g.*, *In re Philbert*, 340 B.R. 886, 890 (Bankr. N.D. Ind. 2006).

The court must determine whether the attorneys' fees are reasonable.  *Jackson v. Dist. of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The plaintiff bears the burden of demonstrating that both the hourly rate and the number of hours spent on any particular task are reasonable.  *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995).  A plaintiff can do so by submitting evidence on: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  Once the plaintiff provides this information, a presumption arises that the number of hours is reasonable and the burden shifts to the defendant to rebut the plaintiff's showing.  *Id*. at 1109–10.

Courts in the District of Columbia have traditionally determined a reasonable hourly rate for complex federal litigation through use of the "*Laffey* Matrix."  *Heller v. Dist. of Columbia*, 832 F. Supp. 2d 32, 40 (D.D.C. 2011).  The *Laffey* Matrix, developed 29 years ago in *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part and rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), provides billing rates for attorneys in the Washington, D.C. market with various degrees of legal experience.  Plaintiff submitted a version of the *Laffey*

Matrix issued by the Civil Division of the United States Attorney's Office ("USAO") for the District of Columbia. Ex. 5 to Pl.'s Mot. Att'ys' Fees.[1] The "USAO *Laffey* Matrix determines hourly rates for attorneys of varying experience levels by taking the hourly rates contained in the original 1982 *Laffey* Matrix and adjusting those rates for inflation based upon changes in the Washington, D.C.-area Consumer Price Index (the "CPI")." *Heller*, 832 F. Supp. 2d at 41.

"The appropriate hourly rate for public interest legal service organizations and for-profit firms engaged in public interest work is the prevailing market rate." *Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 170 (D.D.C. 2005). "Attorneys who do not charge a billing rate, such as those employed with non-profit or public interest groups, may be compensated at the hourly" market rated reflected in the *Laffey* Matrix. *Bolden v. J & R Inc.*, 135 F. Supp. 2d 177, 179 (D.D.C. 2001); *see also Judicial Watch v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) ("For public-interest…lawyers who do not have customary billing rates, courts in this circuit have frequently employed the '*Laffey* Matrix.'").

---

[1] There are two versions of the *Laffey* Matrix that courts in this circuit have accepted. "One version, which is maintained by the Civil Division of the Office of the United States Attorney, calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the United States Consumer Price Index for the Washington, D.C. area for the prior year, and then rounding that rate to the nearest multiple of $5. A second, slightly different version of the *Laffey* Matrix…calculates the matrix rates for each year by using the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based." *Smith v. Dist. of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) (internal quotation marks and abbreviations omitted).

The second version, which adjusts fees based on the legal services component of the CPI, results in higher hourly rates. *See Blackman v. Dist. of Columbia*, 677 F. Supp. 2d 169, 176 (D.D.C. 2010). This second version is often called an "enhanced *Laffey* Matrix" or the "*Salazar* Matrix"—after *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000). Plaintiff bases its fee submission on the non-enhanced *Laffey* Matrix, Pl.'s Mot. Att'ys' Fees 2 n.2, and the District does not disagree with the applicability of this version of the *Laffey* Matrix, Def.'s Opp'n 3. The plaintiff reserves the right to request enhanced *Salazar* rates in future fee submissions. Pl.'s Mot. Att'ys' Fees 2 n.2; Pl.'s Reply 4 n.4.

## III.    DISCUSSION

The Court has found that the District's actions, in propounding unauthorized discovery on the plaintiff, violated the Court's Scheduling Order; the District's actions were not substantially justified, and therefore the plaintiff is entitled to "reasonable expenses—including attorneys' fees" under Rule 16(f)(2).  *ANSWER IV*, 2012 WL 4712980, *4–*5.  The District's Opposition to the plaintiff's fee petition repeats arguments made in its previous Motion for Reconsideration—i.e., that no sanctions are warranted because the District did not act in bad faith.  Def.'s Opp'n 1, 2 & n.2; Def.'s Mot. Reconsideration at *passim*.  But as the Court re-explains in denying reconsideration, the award of reasonable expenses does not require a showing of bad faith, and is appropriate under Rule 16(f)(2).  Mem. Op., Nov. 19, 2012, ECF No 82.  With that settled, the Court can turn to the reasonableness of plaintiff's fee petition.

### A.  Where the Parties Agree

Without conceding that sanctions are appropriate in the first place, the District discusses whether plaintiff's requested fees are reasonable.  There is substantial common ground between the parties.  The D.C. Circuit requires—per *Covington*, 57 F.3d at 1107—that a fee applicant establish a reasonable hourly rate by presenting evidence on (1) the attorneys' billing practices; (2) the attorneys' skill, experience, and reputation; (3) and the prevailing market rates.  Plaintiff's counsel provided considerable evidence on these matters to show that the USAO *Laffey* Matrix should provide the reasonable hourly rate.  Pl.'s Mot. Att'ys' Fees 3–13.  As to billing practices, plaintiff's counsel are public interest lawyers and do not typically charge their clients for their services; courts in this circuit frequently compensate public interest lawyers per the *Laffey* Matrix.  *Id*. at 2–5.  Plaintiff's counsel presented extensive evidence as to their skill,

reputation, and expertise.  *Id.* at 5–13.  Plaintiff's counsel provided evidence on the prevailing market rates by submitting the USAO *Laffey* Matrix.  Ex. 5 to Pl.'s Mot. Att'ys' Fees.

The District and plaintiff fundamentally agree on how the rates should be determined. The "District agrees with plaintiff that the appropriate hourly rates are those set forth in the U.S. Attorney's Office's *Laffey* Matrix."  Def.'s Opp'n 3.  The "District does not dispute opposing counsel's skill, expertise, or reputation."  *Id.* at 3 n.2.

Furthermore, the parties agree that the plaintiff erroneously overbilled for travel time to a client meeting.  Mara Verheyden-Hilliard itemized the following entry for April 17, 2012: "Meeting with client re: discovery from District, includes .8 r/t travel."  Ex. 1b to Pl.'s Mot. Att'ys' Fees 2.  The District objects to this entry, in part because "[t]ravel [ ] time is supposed to be compensated at half the attorney's hourly rate."  *Heller*, 832 F. Supp. 2d at 54 (alterations in original, citations omitted) (quoted by District in Def.'s Opp'n 5).  In its Reply, the plaintiff stated that it will "voluntarily withdraw 50% of this 0.8 hour charge."  Pl.'s Reply 3 n.2.

### B.  Where the Parties Disagree

While the parties agree that the Court should apply the USAO *Laffey* rates, the parties disagree as to the total award that would be reasonable.  Plaintiff's counsel requests $16,211.00 for the costs incurred responding to the District's unauthorized discovery, requesting a protective order, and filing the present fee petition.  Pl.'s Mot. Att'ys' Fees 14 (original request for $16,389.00); Pl.'s Reply 18 (adjusted request for $16,211.00); Ex. 1 to Pl.'s Mot. Att'ys' Fees (providing detailed and itemized invoice).  The District argues that "plaintiff is entitled to no more than $12,554.50"[2] because "while plaintiff's requested hourly rates are reasonable, the number of hours claimed are not."  Def.'s Opp'n 2.

---

[2] Elsewhere, the District argues "an award of no more than $11,842.50 is appropriate" without an explanation for the discrepancy.  Def.'s Opp'n 6.

The District has two main problems with plaintiff's fee petition.  First, the District states, "While the amounts of time claimed by plaintiff's counsel here for their tasks were generally reasonable, a number of entries are duplicative or unreasonable, in relation to the work performed."  *Id.* at 5.  Second, it argues that the historical, rather than the current, *Laffey* rates should apply to a portion of the plaintiff's hours.  The *Laffey* Matrix is updated annually to reflect the present prevailing market rates.  Some of the plaintiff's hours occurred before the current, higher rates went into effect; the District maintains that the plaintiff should be compensated for this earlier work based on the lower rates then in effect.  *Id.* at 3–4.

### 1.  Are the Plaintiff's Hours Reasonable?

In order to calculate a fee award, the court "must determine…the reasonableness of the hours expended on the litigation."  *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 280 (D.D.C. 2008).  To support its request, the plaintiff must submit evidence "sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified."  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982); *see also Woodland*, 255 F.R.D. at 283 (plaintiff must submit evidence justifying number of hours expended).  A "fee application need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney," *Concerned Veterans*, 675 F.2d at 1327, but it may not be "so vaguely generic that the Court can not determine with certainty whether the activities they purport to describe were…reasonable," *Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005).

The Court finds that the itemized invoices submitted by plaintiff's counsel are sufficiently detailed to permit an independent determination of the reasonableness of the hours claimed.  The invoices indicate how counsel spent their time and how their efforts related to

responding to the District's violation of the Scheduling Order.   *See* Ex. 1 to Pl.'s Mot. Att'ys' Fees.   They are not so vague as to warrant any across-the-board deduction of fees.   *Cf. Heller*, 832 F. Supp. 2d at 51–52 (applying 25% deduction to hours submitted by attorney whose vague entries included "Review cases," "Review literature," and "Review DC laws").

The Court should exercise "special caution" when "reviewing fee petitions to be paid by the government[,]" in light of "'the incentive' that a government's 'deep pocket' offers to attorneys to inflate their billing charges and to claim far more reimbursement then [*sic*] would be sought or could be reasonably recovered from private parties."   *Heller*, 832 F. Supp. 2d at 47 & n.13 (quoting *Euclid Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 941–42 (D.C. Cir. 1984)).   The District wants to remind the Court that the fees come from public funds; to avoid depleting resources and providing a windfall to plaintiff, the District asks the Court to limit the fees due plaintiff.   Def.'s Opp'n 4 (citing *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1676–77 (2010) ("In many cases, attorney's fees…are paid [by]…taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services."); *Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*, 656 F.2d 848, 849 (D.C. Cir. 1981) (affirming limited fees because greater award would "result in a windfall profit to the union at the expense of the public fisc")).   In light of *Heller*, the Court has carefully reviewed the fee submission and sees no evidence of "padding the bill" to get at the District's "deep pockets."   The plaintiff does not seek a "windfall," but seeks—per Federal Rule 16(f)(2)—to be made whole for the reasonable costs it incurred responding to the District's unjustified violation of the Scheduling Order.

The District suggests that the fee petition should be closely scrutinized, in part, to protect the public fisc.   This Court is also concerned about government waste, and reminds the District

that an unjustified expenditure of the OAG's resources—violating the Court's Scheduling Order, promulgating unauthorized discovery, issuing interrogatories at parties long since dismissed from the action—prompted the sanctions at issue.  *See ANSWER IV*, 2012 WL 4712980.  The Court issued sanctions to compensate the plaintiff for the costs incurred responding to the District's violation of the Scheduling Order.  As a secondary (and incidental) effect, the Court hopes the sanctions deter the District from engaging in such wasteful, sanctionable conduct again.  If the Court reduces the sanctions, they may lose their deterrent effect and make it more likely that the OAG will commit wasteful, sanctionable conduct going forward.  This could harm the public fisc far more than the money at issue in the present fee petition.

The Court may reduce the number of hours claimed "for failure to allocate tasks efficiently among attorneys…or where some attorneys' efforts have been duplicated by others." *Carmel & Carmel PC v. Dellis Constr., Ltd.*, 858 F. Supp. 2d 43, 47 (D.D.C. 2012).  The Court must also verify that the attorneys did not "waste or otherwise unnecessarily spend time on the matter."  *In re Donovan*, 877 F.2d 982, 990 (D.C. Cir. 1989).  The District makes three specific objections that the plaintiff's billing is duplicative and excessive.  Def.'s Opp'n 5.

First, the District objects to the time plaintiff's counsel took to draft a letter responding to the District's discovery requests:

> [F]or April 4, 2012, plaintiff's counsel claimed 1.8 hours in total for drafting and review of a straightforward, two-page letter to the District, setting forth their interpretation of the Court's Scheduling Order.  The District contends that experienced attorneys should be able to generate such a letter in no more than 30 minutes, even with review and editing.

*Id.*  The plaintiff responds:

> [T]he District's contention is that it is unreasonable for any more than 15 minutes of drafting by each of two attorneys to be expended for this dense, single-spaced two page letter with multiple citations to the record.  To put this 30 minute maximum in one perspective, the correspondence is approximately 550+ words.

> Were undersigned counsel a 50 word per minute typist…the mere mechanics of just copying this letter to print would require approximately 15 minutes…presuming this was merely a typing task.  However…this letter served an important litigation function and required document review and inclusion of references.

Pl.'s Reply 10.  The Court reviewed the letter at issue and finds it is detailed, and its drafting would have required reviewing the record.  *See* Ex. 2 to Pl.'s Mot. Protective Order.  The letter served an important function—trying to resolve a discovery dispute without judicial intervention—and 1.8 hours is more than reasonable to complete this task.  Ironically, the District says that it would take experienced attorneys only 30 minutes to memorialize their interpretation of the Scheduling Order, an Order the District characterizes in its Motion for Reconsideration as deeply ambiguous.  Def.'s Mot. Reconsideration 6.

Second, the District objects to the time plaintiff's counsel took to prepare the Motion for Protective Order:

> Additionally, plaintiff requests some 12.5 hours of attorney time for the drafting and preparation of its Motion for Protective Order.  *See* Exhibit 1a at 4/10/12 to 4/11/12; Exhibit 1b at 4/9/12 to 4/11/12.  The District contends that such a motion may be prepared (with exhibits) in 8 hours or less.

Def's Opp'n 5.  The District makes a bare assertion that the plaintiff took too much time preparing its Motion for Protective Order, without pointing to any specific time entry that it finds excessive or duplicative.  Nevertheless, the plaintiff provided a fastidious and precise explanation of each time entry to which it believed the District was referring.  Pl.'s Reply 14–16.  Even without this explanation, the Court's review of the motion shows it to be thoroughly-researched and well-written; 12.5 hours of drafting time is not excessive, and the plaintiff's explanation of each of its charges reassures the Court in coming to this conclusion.

In its final objection:

> [T]he District objects to paying 1.6 hours of attorney time for opposing counsel to meet with their client, to discuss the District's discovery requests. *See* Exhibit 1b at 4/17/12. Such a meeting could easily have occurred by telephone, if necessary at all (given that the meeting occurred almost a week after plaintiff had filed its Motion for Protective Order objecting to any discovery at all by the District). In any event, even if such time is reasonable…travel time is supposed to be compensated at half the attorney's hourly rate.

Def.'s Opp'n 5 (formatting altered). Plaintiff has stipulated that it will revise its submission to deduct 50% from the 0.8 hours billed to travel time. Pl.'s Reply 3 n.2. The Court finds nothing unreasonable about meeting with a client "to explain the proceedings…including the scope of the burdensome demand issued to it by the District, the range of possibilities, and in general the steps necessary to diligently respond to the burdensome requests if that were ever come to be required." *Id*. at 16. There is nothing excessive about meeting a client face-to-face, rather than conducting all business through impersonal electronic means. After 0.4 hours are deducted for discounted travel time, 1.2 hours represents a reasonable time for this task.

Overall, the District's objections to plaintiff's hours amount to the kind of "nitpicking" that "courts are appropriately loathe to engage in." Def.'s Opp'n 4 (citing *Citizens for Responsibility v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 229 (D.D.C. 2011)). Any special attention courts should pay to fee submissions against the government, *Heller*, 832 F. Supp. 2d at 47, does not justify giving a discount to the government when it has failed to show how the fee submission is excessive, and its wasteful, unauthorized conduct burdened another party. Once the plaintiff met its burden under *Covington* to provide evidence supporting its fee petition, a presumption arose that the number of hours billed is reasonable, and the burden shifted to the District to rebut the plaintiff's showing. *Covington*, 57 F.3d at 1109–10. Merely pointing to certain tasks, and claiming an experienced attorney could have done them quicker, does not met

this burden.  For most tasks, the Court has been able to cross-reference the plaintiff's entries with the work product generated; in so reviewing, the Court found that the quality and thoroughness of the plaintiff's submissions (and the importance of those submissions to the case) justified the time spent preparing them.  Other than the 0.4 hours for travel time the plaintiff voluntarily withdraws, the total number of hours in plaintiff's fee submission is reasonable.

### 2.   Should the Rate be Determined by the Historical or Current *Laffey* Rates?

The Court must determine the "reasonableness of the hourly rate charged."  *Woodland*, 255 F.R.D. at 280.  The parties agree that the USAO *Laffey* Matrix governs, but disagree on how the Court should apply the Matrix.  The USAO updates the *Laffey* Matrix annually to reflect the prior year's regional CPI, resulting in higher rates each year.  *See* Ex. 5 to Pl.'s Mot. Att'ys' Fees.  The updated *Laffey* rates start on June 1 and remain in effect until May 31 of the following year.  The current *Laffey* rates went into effect on June 1, 2012.  *Id.*

Although plaintiff's work spanned two "*Laffey* years," the invoices apply the current rates to all hours.  *See* Ex. 1 to Pl.'s Mot. Att'ys' Fees.  The District objects, as "[a]n appropriate award of attorney's fees against the government is generally calculated based on billing rates at the time that work was performed, as opposed to the time of the fee award."  *Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Security*, 811 F. Supp. 2d 216, 237 (D.D.C. 2011) (quoted by the District in Def.'s Opp'n 3).   The plaintiff responds, "It is appropriate under the circumstances of this case—particularly where the District now states the intention to further protract the advance and resolution of the Motion for Protective Order through an appeal to the U.S. Court of Appeals—for the Court to adopt the framework of awarding fees pursuant to its sanctions order…at the current hourly rates of counsel, thereby adjusting and allowing for any delay in payment."  Pl.'s Reply 6; *see also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("[A]n

appropriate adjustment for delay in payment—whether by application of current rather than historic hourly rates or otherwise—is within the contemplation of the [fee shifting] statute."); *Miller v. Holtzmann*, 575 F. Supp. 2d 2, 19 (D.D.C. 2008) ("Courts in this Circuit have frequently employed the Supreme Court's suggested method of adjustment.").

The Court understands worries about delay—the District has repeatedly asked the Court to stay briefing on or payment of these sanctions. Def.'s Mot. Reconsideration or Stay Pending Final Order, Oct. 12, 2012, ECF No. 70; Def.'s Mot. to Stay Briefing on Att'ys' Fees, Oct. 22, 2012, ECF No. 73. The Court has resisted these attempts to delay payment. Mem. & Order Denying Def.'s Mot. to Stay Briefing, Oct. 23, 2012, ECF No. 73; Mem. Op. & Order Denying Def.'s Mot. Reconsideration or Stay, Nov. 19, 2012, ECF Nos. 81 & 82. The District will not be able to delay payment of sanctions without requesting leave of this Court, or appeal the Court's sanctions order or denial of reconsideration until the Court enters final judgment in the case.

The Supreme Court held that an "order imposing sanctions on an attorney" pursuant to the Federal Rules of Civil Procedure is not a final decision over which the court of appeals has jurisdiction. *Cunningham v. Hamilton County*, 527 U.S. 198, 200 (1999). The attorney could not appeal the sanctions order until the court entered final judgment in the underlying action, although the attorney no longer represented a party to the case. *Id.* The Court adopted a strong rule that sanctions orders are not final; while "[p]erhaps not every discovery sanction will be inextricably intertwined with the merits," the Court has "consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." *Id.* at 206. The D.C. Circuit follows *Cunningham* and does not consider sanctions orders final, and generally disallows interlocutory appeals of an award of sanctions. *See, e.g.*, *Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1347–49 (D.C. Cir. 2006).

The Court will order the District to pay sanctions within sixty days of the date of the Order accompanying this Opinion, so there will be no delay warranting an across-the-board application of the current *Laffey* rates. The District is correct that reasonable fees against the government should typically be "calculated based on billing rates at the time that work was performed, as opposed to the time of the fee award." *Electronic Privacy Info. Ctr.*, 811 F. Supp. 2d at 237. Therefore, the Court will apply the historical 2011–12 *Laffey* rates to work occurring before June 1, 2012, and apply the current 2012–13 rates to work occurring thereafter. This results in a minor deduction to plaintiff's requested fees, as reflected in the following section.

### C. Calculating the Reasonable Expenses and Fees Due to Plaintiff

The plaintiff has met its burden under *Covington*, 57 F.3d at 1107, to present evidence on their billing practices, experience and expertise, and the prevailing rates. It has shown—as the District concedes—that the Court should use the USAO *Laffey* Matrix to determine the hourly rate. Pl.'s Mot. Att'ys' Fees 2–5; Def.'s Opp'n 3. It has provided detailed, itemized invoices permitting the Court to independently scrutinize its submissions and determine whether the total number of hours billed is reasonable. Ex. 1 to Pl.'s Mot. Att'ys' Fees. The plaintiff's fee petition is largely reasonable. After considering the objections raised by the District and the concessions made in the plaintiff's Reply, the Court shall recalculate the plaintiff's original request to deduct half of the 0.8 hour charge for travel time, and apply the historical *Laffey* rates to the hours performed before the current *Laffey* rates became effective. With these changes, the Court can summarize the reasonable fees as follows:

| Professional | *Laffey* Year | Hours | Rate | Amount |
|---|---|---|---|---|
| Carl Messino | 2011–12 | 17.90 | $435.00/hour | $7,786.50 |
|  | 2012–13 | 4.50 | $445.00/hour | $2,002.50 |
| Mara Verheyden-Hilliard | 2011–12 | 10.40[3] | $435.00/hour | $4,524.00 |
|  | 2012–13 | 2.00 | $445.00/hour | $890.00 |
| Jessica Langer | 2011–12 | 3.40 | $140.00/hour | $476.00 |
|  | 2012–13 | 1.60 | $145.00/hour | $232.00 |
| **Total Amount of Reasonable Attorneys' Fees and Expenses** | | | | $15,911.00 |

"2011–12 *Laffey* Year" reflects all work performed between June 1, 2011 and May 31, 2012.

"2012–13 *Laffey* Year" reflects all work performed between June 1, 2012 and May 31, 2013.

The plaintiff's expenses are detailed and itemized in Ex. 1 to Pl.'s Mot. Att'ys' Fees.

Therefore, the plaintiff is entitled not to the $16,389.00 it initially requested (or the $16,211.00 it later requested in its Reply), but an award of $15,911.00. This amount is reasonable and fairly compensates the plaintiff for the expenses it incurred due to the District's violation of the Scheduling Order.

## IV.   CONCLUSION

Federal Rule of Civil Procedure 16(f)(2) seeks to protect the court's ability to manage its docket and compensate a party when its opponent violates a scheduling order. An innocent party should not bear the costs incurred because of another's unjustified violation of a court order. By shifting these costs to the insubordinate party, the Federal Rules protect the compliant party and deter future wasteful, dilatory action.

The plaintiff has submitted a largely reasonable fee petition. After deducting 0.4 hours for unbillable travel time and applying historical *Laffey* rates to hours completed before the

---

[3] This reflects a 50% reduction of the 0.8 hours billed to travel time to meet with the client.

current *Laffey* rates went into effect, the Court determines that the plaintiff is entitled to an award of reasonable attorneys' fees and costs in the amount of $15,911.00.  The District shall pay this amount within sixty days of the date of the Order accompanying this Memorandum Opinion.

The plaintiff has indicated that it may submit a supplemental fee petition requesting costs for preparing the reply in support of its submission, and perhaps request fees for filing its Opposition to Defendant's Motion for Reconsideration, Oct. 26. 2012, ECF No. 75.[4]  The Court will consider those petitions if and when it receives them.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed, Royce C. Lamberth, Chief Judge, November 19, 2012.

---

[4] Granting attorneys' fees for a violation of a scheduling order is relatively straightforward and provided for by Rule 16(f)(2).  There is not a similarly explicit and obvious power to grant attorneys' fees for preparing an opposition to a motion for reconsideration.  The plaintiff would either need to find a Rule-based grounds for issuing sanctions, or explain in detail how the Court could grant sanctions under its inherent powers.